## DETROIT PUBLIC SCHOOLS v CONN

Docket Nos. 317007 and 317050. Submitted October 14, 2014, at Detroit. Decided November 25, 2014, at 9:10 a.m. Leave to appeal sought.

Stephen Conn and three other teachers who are members of the Detroit Federation of Teachers (DFT) employed by the Detroit Public Schools (DPS) filed complaints with the Michigan Department of Licensing and Regulatory Affairs, Wage and Hour Division (the wage & hour division), asserting that a deduction from or reduction of their pay under a provision known as the Termination Incentive Plan (TIP) contained in a collective-bargaining agreement (CBA) between the DPS and the DFT violated several provisions of the payment of wages and fringe benefits act (PWFBA), MCL 408.471 *et seq.* The wage & hour division rejected the complaints on the basis that the CBA authorized the deductions under the TIP provision and, therefore, the deductions did not violate the provisions of § 7(1) of the act, MCL 408.477(1). The teachers appealed and the appeal proceeded to a hearing before a hearings officer. The hearings officer issued a decision that determined that the TIP deductions were being made for the benefit of the DPS and violated MCL 408.477(2) because the teachers had not given their written consent for the deductions. The hearings officer reversed the wage & hour division's dismissal of the teachers' complaints and ordered the DPS to pay the teachers the amount that had been deducted from their pay under the TIP program. The hearings officer denied a request for a rehearing by the DPS. The DPS appealed in the Wayne Circuit Court. The circuit court remanded the matter to the hearings officer for reconsideration. The hearings officer reached the same determination on remand. The DPS appealed again. The circuit court, Wendy M. Baxter, J., affirmed the hearings officer's July 13, 2012 decision. The Court of Appeals granted applications for leave to appeal by the DPS (Docket No. 317007) and the wage & hour division (Docket No. 317050) and consolidated the appeals.

The Court of Appeals *held*:

1. The plain and unambiguous language of MCL 408.481(1) to (3) provide that the wage & hour division had the jurisdiction, the power and authority, to make the investigation and determination

that it made regarding the teachers' complaints under the PWFBA. The clear and unmistakable language of the PWFBA confers the power and authority of the wage & hour division to interpret and apply the PWFBA on the hearings officer to review the wage & hour division's determination of complaints filed under the PWFBA.

2. The circuit court and the hearings officer erred by not applying the clear and unambiguous provisions of MCL 408.477(1) and by reading MCL 408.477(2) as a limitation on MCL 408.477(1) that is not within the manifest intent of the Legislature as derived from the act itself. This substantial and material misinterpretation of the act regarding § 7(1) and § 7(2) led the hearings officer and the circuit court to reach the erroneous and unsupported conclusion that the deductions or reduction at issue violated other provisions of the PWFBA. A reasonable reading of the two subsections is that when a wage deduction is required by law or expressly permitted by a CBA, the deduction is exempted from the written consent requirements of both subsections. The order of the circuit court is reversed, the July 13, 2012 decision of the hearings officers is vacated, and the matter is remanded to the hearings officer for the entry of an order or orders dismissing the teachers' complaints.

3. The longstanding interpretation of the wage & hour division that a deduction from or reduction of wages authorized by a CBA comes within the exception of § 7(1) and is therefore not subject to the individual written consent requirements of § 7(2) is entitled to respectful consideration by the Court of Appeals.

4. The hearings officer's conclusion that § 7(2), the more general provision in this case, controls over § 7(1), the more specific provision in this case, violates the settled rule of statutory construction that where two statutory subsections address the same subject, the more specific subsection controls over the more general subsection.

5. Section 7(1) permits a deduction or reduction for any lawful purpose when it is part of a CBA. The parties to the CBA agreed to the TIP provision and, as DFT members, the teachers are bound by its terms.

6. The hearings officer erred as a matter of law by concluding that the TIP deduction or reduction violated MCL 408.472(3), MCL 408.476(1), and MCL 408.478(1).

Order of the circuit court reversed, decision of the hearings officer vacated, and case remanded to the hearings officer for entry of order dismissing the complaints.

*Miller, Canfield, Paddock and Stone, PLC* (by *Leonard D. Givens, Charles T. Oxender,* and *Brian M. Schwartz*), for the Detroit Public Schools.

*Scheff, Washington & Driver, PC* (by *George B. Washington*), for Stephen Conn, Christal Bonner, Enid Childers, and Regina Dixon.

*Bill Schuette,* Attorney General, *Aaron D. Lindstrom,* Solicitor General, *Matthew Schneider,* Chief Legal Counsel, and *Thomas D. Warren* and *Emily A. McDonough,* Assistant Attorneys General, for the Department of Licensing and Regulatory Affairs.

Before: BOONSTRA, P.J., and MARKEY and K. F. KELLY, JJ.

PER CURIAM. Detroit Public Schools (DPS) (Docket No. 317007) and the Department of Licensing and Regulatory Affairs, Wage and Hour Division (the wage & hour division or agency) (Docket No. 317050) appeal separately by leave granted the Wayne Circuit Court order of June 12, 2013, affirming the July 13, 2012 decision of the hearings officer, Tyra Wright. The hearings officers ruled that a deduction from or reduction of appellee-teachers' pay, which was authorized by a collective-bargaining agreement (CBA) between the DPS and the Detroit Federation of Teachers (DFT), violated several provisions of 1978 PA 390, the payment of wages and fringe benefits act (PWFBA or the act), MCL 408.471 *et seq.* This Court subsequently consolidated the two appeals for the efficient administration of the appellate process. *Detroit Pub Sch v Conn,* unpublished order of the Court of Appeals, entered February 12, 2014 (Docket Nos. 317007 and 317050).

For the reasons discussed in this opinion, we find no merit to appellants' arguments that the hearings officer lacked jurisdiction to consider the complaints of appellee-teachers (hereafter "appellees") of violations of the PWFBA. But we also conclude that the hearings officer and the circuit court erred in their interpretation of the PWFBA and by finding that its provisions were violated. These conclusions render moot the other issues raised in these appeals; therefore, we reverse the circuit court's order affirming the July 13, 2012 decision of the hearings officer, vacate that decision, and remand this matter to the hearings officer for entry of an order or orders dismissing appellees' complaints.

## I. SUMMARY OF FACTS AND PROCEEDINGS

Appellees are teachers and members of the DFT employed by the DPS. The DPS and the DFT entered into a CBA on December 18, 2009, that contains a provision known as the Termination Incentive Plan (TIP), which provided, in part:

> Beginning January 12, 2010 and ending with the fourth . . . pay of the 2011-2012 school year (for a total of 40 payments), all salaried members of the bargaining unit (except assistant attendance officers, accompanists and members who work less than .50 FTE) shall have $250 per pay deducted from their pay and deposited into a [TIP] account. . . .

> Bargaining unit members who retire or resign from the District following ratification of the 2009-2012 Agreement shall receive a Termination of Service Bonus of [$1000] for each year of service with the District up to ten . . . years of service, with a cap of $10,000. Bargaining unit members on layoff status shall not be entitled to this Bonus until such time as they are removed from the layoff list . . . . However, no member's Termination of Service Bonus shall exceed the amount he/she contributed to his/her TIP account . . . .

> Members may elect to have their Termination of Service Bonus paid as a lump sum, deposited into an annuity, or deposited into a Tax Deferred Plan (TDP). [Underlining and paragraph headings omitted.]

Appellees[1] initiated this action by filing complaints with the wage & hour division. They asserted that the TIP provision violates the PWFBA. The wage & hour division rejected the complaints on the basis of § 7(1) of the act, MCL 408.477(1), which states, in part:

> *Except for those deductions required or expressly permitted* by law or *by a collective bargaining agreement,* an employer shall not deduct from the wages of an employee, directly or indirectly, any amount . . . without the full, free, and written consent of the employee, obtained without intimidation or fear of discharge for refusal to permit the deduction. [Emphasis added.]

The agency reasoned that a CBA between the DPS and the DFT authorized the TIP deductions; therefore, they were within the exception of § 7(1). The appellees also asserted claims in the administrative proceedings that the CBA was improperly adopted, but the agency ruled that it lacked authority to address such allegations.

Appellees appealed the wage & hour division's rejection of their claims, and the appeal proceeded to a hearing before the hearings officer. Appellees argued that the TIP provision violated § 7(2) of the act, MCL 408.477(2), which provides, in pertinent part:

> Except as provided in this subsection and subsection (4), a deduction for the benefit of the employer requires written consent from the employee for each wage payment subject to the deduction, and the cumulative amount of the deduc-

---

[1] The claims of the four appellee-teachers in this case are representative of those of many DFT members who challenged the TIP provisions and represent "test cases" for all employees who have filed complaints.

tions shall not reduce the gross wages paid to a rate less than minimum rate as defined in the minimum wage law . . . .

The DPS asserted that deductions for any purpose are permitted when authorized by a CBA and that DFT members are deemed to have consented to the terms of a CBA. Appellees disagreed, arguing that deductions under the CBA exception of § 7(1) must be for dues and other union fees.

On April 22, 2011, the hearings officer issued her decision, which agreed with appellees' arguments that the TIP deductions were being made for the DPS' benefit and violated § 7(2) of the act because appellees had not given written consent for the deductions. She concluded:

> DPS is withholding a portion of [appellees'] wages resulting in [appellees] failing to receive a portion of their wages in a timely manner. The $250 deduction from each paycheck is being withheld until some future time–weeks, months or years–depending on when a teacher retires or resigns; never, in those cases where a teacher is terminated. In short, there is no approval under the statute of an I.O.U. or option to not pay full wages to an employee who has worked his or her full schedule.
>
> . . . I find [appellees] met the burden of proving that the Wage & Hour Division should not have dismissed their claims on the grounds the deductions were allowed by a collective bargaining agreement. Furthermore, I find that the employer violated Sections 2(3), 6(1), 7(2) and 8(1) of Act 390.

The other sections of the act the hearings officer referred to are, respectively, § 2(3), MCL 408.472(3) (requiring regular weekly or biweekly payment of wages); § 6(1), MCL 408.476(1) (specifying that the methods of paying wages are restricted to United States currency, electronic deposit at a financial institution,

and debit cards meeting certain criteria); and § 8(1), MCL 408.478(1) (prohibiting an employer from demanding a fee, gift, tip, gratuity, or other remuneration as a condition of employment or continued employment). She did not explain how these other provisions of the act applied apart from her determination that the CBA exception of § 7(1) did not apply and that the TIP provision violated § 7(2) of the act. On the basis of this reasoning, the hearings officer reversed the wage & hour division's dismissal of appellee's complaints and ordered the DPS to pay each appellee the amount deducted from their wages under the TIP program.

The DPS moved for a rehearing and to stay the enforcement of the April 22, 2011 decision, submitting "new evidence" in the form of a February 2010 letter of agreement between it and the DFT that clarified the intent of the parties regarding the TIP provision in the CBA. The letter of understanding modified the wording of the TIP from saying "shall have $250 per pay *deducted* from their pay" to saying "shall have their pay *reduced* by $250 per pay." In essence, the revised language relabeled the $250 *deduction* per pay period to constitute a $250 *reduction* of pay per pay period. The hearings officer ruled that the new evidence did not justify granting a rehearing and denied the DPS' motions. The DPS then filed its appeal of the hearings officer's final decision in the Wayne Circuit Court. The circuit court remanded the matter to the administrative agency for reconsideration of the letter of agreement.

The hearings officer rejected the DPS' arguments that the letter of agreement established that the TIP provision provided for a reduction in wages rather than a deduction from wages and that respondents' challenge to the TIP presented a claim of an unfair labor practice that was within the exclusive jurisdiction of the

Michigan Employment Relations Commission (MERC). The hearings officer concluded that the letter of agreement had not changed the substance of the TIP provision. The hearings officer also concluded that the argument that appellees' complaint was really an unfair labor practice charge within the jurisdiction of MERC was "nonsensical."

On appeal again in the circuit court, the DPS argued that the CBA authorizes the TIP; therefore, it was valid under § 7(1) of the PWFBA. It also argued that appellees have, in essence, asserted an unfair labor practice claim within the exclusive jurisdiction of MERC under the public employment relations act (PERA), MCL 423.201 *et seq*.

In a June 12, 2013 opinion and order, the circuit court agreed with the hearings officer's conclusion that the TIP provision violates the PWFBA. The court affirmed the hearings officer's decisions and entered a judgment against appellants. As noted, the DPS (Docket No. 317007) and the wage & hour division (Docket No. 317050) appeal by leave granted the circuit court's opinion and order. Appellants argue that because the TIP provision was part of a CBA, the hearings officer and the circuit court erred by finding that it violated the PWFBA. Appellants also argue that appellees' claims are an unfair labor charge within the exclusive jurisdiction of MERC under PERA.

## II. ANALYSIS

### A. JURISDICTION

#### 1. STANDARD OF REVIEW

As presented in this case, the question concerning the hearings officer's jurisdiction is one of law that this Court reviews de novo. *Michigan's Adventure, Inc v*

*Dalton Twp*, 287 Mich App 151, 153; 782 NW2d 806 (2010). Because an administrative agency has only the power that the Legislature has conferred on it, *Oshtemo Charter Twp v Kalamazoo Co Rd Comm*, 302 Mich App 574, 584; 841 NW2d 135 (2013), the issue becomes one of statutory construction, which is also reviewed de novo. *In re Harper*, 302 Mich App 349, 352; 839 NW2d 44 (2013); see also MCL 24.306(1)(b) (providing for judicial review of an agency decision to determine if it is "[i]n excess of the statutory authority or jurisdiction of the agency").

### 2. DISCUSSION

Although we conclude that the hearings officer erred as a matter of law in her interpretation and application of the PWFBA under the facts and circumstances presented in this case, as discussed in the next issue, she possessed subject-matter jurisdiction to do so.

Subject-matter jurisdiction presents the question whether the agency and the hearings officer have "the power to hear and determine a cause or matter." See *Bowie v Arder*, 441 Mich 23, 36; 490 NW2d 568 (1992) (citation and quotation marks omitted). As noted, administrative agencies and their administrative appellate branches are creatures of the Legislature, limited to the power and authority conveyed by statute. *Oshtemo Charter Twp*, 302 Mich App at 584. "Administrative agencies have no common-law powers." *Herrick Dist Library v Library of Mich*, 293 Mich App 571, 582; 810 NW2d 110 (2011). But the Legislature may confer on an administrative agency the power to enact rules regarding details, to conduct hearings to find facts, and to exercise some discretion in administering a statute. *Id.* This authority, however, must be clearly expressed in the enabling statute and will not be

extended by inference. *Id.* at 582-583. Thus, the general rule "is that the power and authority of an agency must be conferred by clear and unmistakable statutory language." *Id.* at 583.

In this case, appellee DFT members filed complaints with the wage & hour division alleging that the DPS was violating certain provisions of the PWFBA. MCL 408.481(1), § 11(1) of the act, provides, in pertinent part: "An employee who believes that his or her employer has violated this act may file a written complaint with the department[2] within 12 months after the alleged violation." The act further provides that the department shall "investigate the claim and shall attempt to informally resolve the dispute." MCL 408.481(2). If unable to resolve the matter, the department "shall notify the employer and employee within 90 days after the complaint is filed" of its "determination of the merits of the complaint . . . ." MCL 408.481(3). In this case, the wage & hour division notified appellees by letter that their complaints would be dismissed. After stating the provisions of § 7(1) of the act, the wage & hours division wrote:

> The Termination Incentive Plan (TIP) account deduction(s) that were agreed upon by The Detroit Federation of Teachers on December 3, 2009 (see collective bargaining agreement Article 98) allowed Detroit Public Schools to make the deductions claimed. The allegation that "Illegal Contract Negotiations" took place during this period is not an issue the Wage & Hour Division has authority to address. As a result, no further action will be taken and the above-referenced complaint will be dismissed.

---

[2] MCL 408.471(a) defines "department" as the "department of labor." It is undisputed that the authority of the former Department of Labor regarding the act has devolved by executive orders to the wage and hour division of the Department of Licensing and Regulatory Affairs.

By the plain and unambiguous language of MCL 408.481(1) to (3), the wage & hour division had jurisdiction—the power and authority—to make the investigation and determination that it made regarding appellees' complaints under the PWFBA.

After the wage & hour division made its decision and notified the parties, both the employer and the employees were afforded 14 days to request a review of the decision, or it would become final. MCL 408.481(4). Appellees filed timely requests for review. Section 11 of the act provides the following with respect to review of the agency's decision:

(6) The employee, employer, and the department shall be parties to a proceeding before a hearings officer brought pursuant to this section.

(7) The director shall appoint hearings officers to make determinations in proceedings brought pursuant to this section. All proceedings in a hearing shall be conducted pursuant to the procedures applicable to the trial of contested cases under Act No. 306 of the Public Acts of 1969, as amended, being sections 24.201 to 24.315 of the Michigan Compiled Laws. The hearings officer shall affirm, modify, or rescind the order of the department and may assess costs as provided in section 18(3).

(8) The hearings officer shall issue a determination which constitutes a final disposition of the proceedings to each party within 30 days after the conclusion of the hearing. The determination of the hearings officer shall become the final agency order upon receipt by the parties.

(9) A party to the proceeding may obtain judicial review of the determination of the hearings officer pursuant to Act No. 306 of the Public Acts of 1969, as amended. Venue for an appeal under this act shall only be in the circuit where the employee is a resident, where the employment occurred, or where the employer has a principal place of business. [MCL 408.481(6) to (9).]

Thus, the statute plainly provides for the appointment of a hearings officer to hear and decide an appeal of a decision by the wage & hour division regarding a complaint alleging violation of the PWFBA. This review occurs in accordance with trial-like procedures of a contested case under the Administrative Procedures Act (APA), MCL 24.201 *et seq.* At the conclusion of the contested case proceedings, the hearings officer "shall affirm, modify, or rescind the order of the department . . . ." MCL 408.481(7). Thus, the statute "by clear and unmistakable statutory language" confers the power and authority of the wage & hour division to interpret and apply the PWFBA on the hearings officer to review the agency's determination of complaints filed under the act. *Herrick Dist Library*, 293 Mich App at 583.

### B. THE STATUTE

#### 1. STANDARD OF REVIEW

Our Constitution provides the minimum standard of review applicable to "final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights . . . ." Const 1963, art 6, § 28. That minimum standard includes reviewing the agency's or officer's decision to determine whether it is "authorized by law." *Id.* "An agency's decision is not authorized by law if it violates a statute or constitution, exceeds the statutory authority or jurisdiction of the agency, is made after unlawful procedures that result in material prejudice, or is arbitrary and capricious." *Oshtemo Charter Twp*, 302 Mich App at 583-584.

An agency's findings of fact are reviewed to determine if "the same are supported by competent, material and substantial evidence on the whole record."

Const 1963, art 6, § 28; see also *Huron Behavioral Health v Dep't of Community Health*, 293 Mich App 491, 497; 813 NW2d 763 (2011). Deference must be accorded an agency's findings of fact, especially when made on the basis of credibility determinations or conflicting evidence. *Dep't of Community Health v Anderson*, 299 Mich App 591, 598; 830 NW2d 814 (2013).

Administrative decisions are also subject to review "as provided by law." Const 1963, art 6, § 28. MCL 408.481(9) instructs that the hearings officer's decision be reviewed "pursuant to" the APA, MCL 24.201 *et seq*. Section 106 of the APA provides that a decision or order of an administrative agency affecting substantial rights of an appellant may be set aside where it is: "(a) In violation of the constitution or a statute [or] (b) In excess of the statutory authority or jurisdiction of the agency [or] . . . (f) Affected by other substantial and material error of law." MCL 24.306(1); see also *Huron Behavioral Health*, 293 Mich App at 496.

In this case, essentially, the determination whether the hearings officer's decision is "authorized by law," Const 1963, art 6, § 28, or in violation of or in excess of statutory authority, MCL 24.306(1)(a) and (b), turns on statutory interpretation. The interpretation and application of a statute in particular circumstances is a question of law this Court reviews de novo. *Autodie LLC v Grand Rapids*, 305 Mich App 423, 427; 852 NW2d 650 (2014); *United Parcel Serv, Inc v Bureau of Safety & Regulation*, 277 Mich App 192, 202; 745 NW2d 125 (2007).

2. DISCUSSION

We conclude that the circuit court and the hearings officer erred by not applying the clear and unambiguous provisions of § 7(1), MCL 408.477(1), and by reading

§ 7(2), MCL 408.477(2), as a limitation on § 7(1) that is "not within the manifest intent of the Legislature as derived from the act itself." *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 218; 801 NW2d 35 (2011) (citation and quotation marks omitted). This substantial and material misinterpretation of the act regarding § 7(1) and § 7(2) led the hearings officer and the circuit court to reach the erroneous and unsupported conclusion that the deduction or reduction at issue violated other provisions of the PWFBA. Consequently, we reverse the circuit court's order, vacate the decision of the hearings officer, and remand this matter to the hearings officer for entry of an order or orders dismissing appellees' complaints.

The critical and pertinent language of MCL 408.477 at issue provides:

> (1) *Except for those deductions required or expressly permitted* by law or *by a collective bargaining agreement*, an employer shall not deduct from the wages of an employee, directly or indirectly, any amount . . . without the full, free, and written consent of the employee, obtained without intimidation or fear of discharge for refusal to permit the deduction. . . .
>
> (2) Except as provided in this subsection and subsection (4), a deduction for the benefit of the employer requires written consent from the employee for each wage payment subject to the deduction, and the cumulative amount of the deductions shall not reduce the gross wages paid to a rate less than minimum rate as defined in the minimum wage law of 1964, 1964 PA 154, MCL 408.381 to 408.398. [Emphasis added.]

In *Autodie*, 305 Mich App at 428, the Court laid the framework for statutory construction:

> When interpreting a statute, our goal is to give effect to the intent of the Legislature. The language of the statute itself is the primary indication of the Legislature's intent.

If the language of the statute is unambiguous, we must
enforce the statute as written. This Court reads the provi-
sions of statutes reasonably and in context, and reads
subsections of cohesive statutory provisions together. [Ci-
tations and quotation marks omitted.]

Another pertinent rule for construing a statute pro-
vides that nothing may be read into a statute that is not
within the intent of the Legislature apparent from the
language of the statute itself. See *United Parcel Serv*,
277 Mich App at 202, 206, citing *Roberts v Mecosta Co
Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).
" 'Courts may not speculate regarding legislative intent
beyond the words expressed in a statute. Hence, noth-
ing may be read into a statute that is not within the
manifest intent of the Legislature as derived from the
act itself.' " *Mich Ed Ass'n*, 489 Mich at 217-218,
quoting *Omne Fin, Inc v Shacks, Inc*, 460 Mich 305,
311; 596 NW2d 591 (1999) (opinion by KELLY, J.).

We also consider pertinent to our review of the
hearings officer's decision the principle that an appel-
late court must afford some deference to an agency's
administrative expertise. See *Dep't of Community
Health*, 299 Mich App at 598; *Huron Behavioral Health*,
293 Mich App at 497 ("great deference should be given
to an agency's administrative expertise"). Our Supreme
Court has explained:

"[T]he construction given to a statute by those charged
with the duty of executing it is always entitled to the most
respectful consideration and ought not to be overruled
without cogent reasons. However, these are not binding on
the courts, and [w]hile not controlling, the practical con-
struction given to doubtful or obscure laws in their admin-
istration by public officers and departments with a duty to
perform under them is taken note of by the courts as an
aiding element to be given weight in construing such laws
and is sometimes deferred to when not in conflict with the

indicated spirit and purpose of the legislature." [*In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103; 754 NW2d 259 (2008), quoting *Boyer-Campbell Co v Fry*, 271 Mich 282, 296-297; 260 NW 165 (1935) (citations and quotation marks omitted).]

Thus, appellate courts must give " 'respectful consideration' and 'cogent reasons' for overruling an agency's interpretation." *Rovas*, 482 Mich at 103; see also *Monroe v State Employees' Retirement Sys*, 293 Mich App 594, 606-607; 809 NW2d 453 (2011). But, "the agency's interpretation is not binding on the courts, and it cannot conflict with the Legislature's intent as expressed in the language of the statute at issue." *Rovas*, 482 Mich at 103; see also *United Parcel Serv*, 277 Mich App at 202-203. In this case, the longstanding interpretation of the wage & hour division that a deduction from or reduction of wages authorized by a CBA comes within the exception of § 7(1) and is therefore not subject to the individual written consent requirements of § 7(2), is entitled to " 'respectful consideration.' " *Rovas*, 482 Mich at 103, 106; *Catalina Mktg Sales Corp v Dep't of Treasury*, 470 Mich 13, 23-24; 678 NW2d 619 (2004).

Section 7(1) plainly states the general rule that any deduction that an employer makes from an employee's wages must be authorized by the "full, free, and written consent of the employee, obtained without intimidation or fear of discharge for refusal to permit the deduction." But this subsection by its plain terms also provides two exceptions to the general rule requiring written consent for employer deductions from an employee's wages: (1) "deductions required or expressly permitted by law" and (2) "deductions required or expressly permitted . . . by a collective bargaining agreement . . . ." MCL 408.477(1). The Legislature's intent with respect to these two exceptions is plainly evident. Written consent

is unnecessary in the first instance because the employer is required as a matter of law to make the deductions regardless of whether the employee consents. With respect to the collective bargaining agreement exception, the Legislature recognized that the employee's representative, the union, has already consented to the employer's deduction from the employee's wages through a written CBA. No language in § 7(1) specifically subjects the CBA exception to the benefit analysis and individual consent requirements of § 7(2). Similarly, no language in § 7(2) specifically applies its terms to § 7(1). Nothing may be read into a statute that is not within the manifest intention of the Legislature as gathered from the statute itself. *United Parcel Serv*, 277 Mich App at 202. A reasonable reading of the two subsections in context is that when a wage deduction is required by law or expressly permitted by a CBA, the deduction is exempted from the written consent requirements of both subsections. *Autodie*, 305 Mich App at 428. On the other hand, when neither of the exceptions of § 7(1) applies and the deduction could be considered "for the benefit of the employer," the individual "written consent from the employee for each wage payment subject to the deduction" is required. MCL 408.477(2).

The hearings officer does not provide cogent reasons for rejecting the wage & hour division's longstanding interpretation of MCL 408.477(1). Instead, without providing cogent reasons, the hearings officer determined that the TIP deductions benefited the DPS and, because they were not authorized by written consents, the CBA could not be used to violate § 7(2). The hearings officer also determined, again without providing clear reasons, that the TIP deductions were an illegal fee, gift, tip, or gratuity under § 8(1), resulted in earned wages not being regularly paid contrary to

§ 2(3), and somehow violated § 6(1) regarding the manner and method of paying wages.

The hearings officer's conclusion that § 7(2) controls over § 7(1) also violates the settled rule of statutory construction that where two statutes (here subsections) address the same subject (deductions from wages), the more specific statute, in this case § 7(1) permitting deductions authorized by a CBA, controls over the more general provision, in this case § 7(2). See *In re Harper*, 302 Mich App at 358, citing *Slater v Ann Arbor Pub Sch Bd of Ed*, 250 Mich App 419, 434-435; 648 NW2d 205 (2002) (opining that "where two statutes or provisions conflict and one is specific to the subject matter while the other is only generally applicable, the specific statute prevails").

A more fundamental flaw in the hearings officer's reasoning stems from ignoring the purpose of collective bargaining and the result when a collective bargaining agreement is reached. Under § 15 of PERA, MCL 423.201 *et seq.*, public employers must bargain in good faith with the representatives of public employees regarding mandatory subjects of bargaining that include "wages, hours, and other terms and conditions of employment . . . ." MCL 423.215(1); *Detroit Police Officers Ass'n v Detroit*, 391 Mich 44, 54-56; 214 NW2d 803 (1974). When the bargaining parties reach a collective bargaining agreement, the parties have determined the public employees "wages, hours, and other terms and conditions of employment" and placed that determination into a written contract. When interpreting a contract, a court must ascertain and enforce the parties' intent as expressed in its plain terms. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 61; 664 NW2d 776 (2003); *Burkhardt v Bailey*, 260 Mich App 636, 656; 680 NW2d 453 (2004). Also, courts must "read contracts as a

whole, giving harmonious effect, if possible, to each word and phrase." *Wilkie*, 469 Mich at 50 n 11; see also *Perry v Sied*, 461 Mich 680, 689 n 10; 611 NW2d 516 (2000) ("contracts are to be interpreted and their legal effects determined as a whole," citing 3 Corbin, Contracts, § 549, pp 183-186). Thus, a contract should be read as a whole, with meaning given to all of its terms. *Century Surety Co v Charron*, 230 Mich App 79, 82; 583 NW2d 486 (1998).

The fact that the hearings officer believed the TIP program benefited the DPS is not material to whether its required deduction or reduction of wages violates the PWFBA. First, because the deduction or reduction is part of a CBA, § 7(1) permits the deduction or reduction, by whatever name, for any lawful purpose.[3] The parties to the CBA have agreed to the TIP provision and, as DFT members, appellees are bound by its terms. See *Port Huron Ed Ass'n v Port Huron Area Sch Dist*, 452 Mich 309, 319; 550 NW2d 228 (1996), quoting *Dep't of the Navy v Fed Labor Relations Auth*, 295 US App DC 239, 248; 962 F2d 48 (1992) (" 'When parties bargain about a subject and memorialize the results of their negotiation in a collective bargaining agreement, they create a set of enforceable rules—a new code of conduct for themselves—on that subject.' "). To the extent that the CBA is subject to review as part of appellees' complaint filed under the PWFBA, we note that reading

---

[3] Appellants and appellees assert that *Mich Ed Ass'n*, 489 Mich at 226-227, favors their interpretation of § 7(1). But that case held merely that a school district—a "public body" under the Michigan Campaign Finance Act (MCFA), MCL 169.201 *et seq.*—cannot lawfully administer a payroll deduction plan authorized by a CBA when the school district's activity in doing so is, in fact, an illegal campaign contribution under § 55 of the MCFA, MCL 169.255. Consequently, the holding of *Mich Ed Ass'n*, 489 Mich 194, is not directly applicable to the facts and circumstances of the present case.

it as a whole reveals that it divides employee compensation into current wages and a contingent future bonus or a "fringe benefit" under MCL 408.471(e). An employer may "withhold a payment of compensation due an employee as a fringe benefit to be paid at . . . termination" when "the withholding is agreed upon by written contract . . . ." MCL 408.474.

Finally, we find that the hearings officer's analysis ascribing the "benefit" of one portion of the CBA to the DPS is very problematic. The very nature of collective bargaining involves give and take and compromise based on each of the bargaining parties' desire to maximize what they value most. The result may not be pleasant to either side, and a determination made by an outsider is fraught with value judgments that may not be the same as those of the negotiating parties. Indeed, to ascribe "benefit" to one party from one portion of a CBA is merely an exercise in speculation. Further, allowing disgruntled members of a public employee union to collaterally attack a CBA on the basis of a claimed "benefit" supposedly conferred on the public employer would imperil the policy of this state to resolve public employer-public employee strife through collective bargaining. See *Port Huron Ed Ass'n*, 452 Mich at 311 ("A primary goal of the public employees relations act is to resolve labor-management strife through collective bargaining.").

For many of the same reasons, the hearings officer erred as a matter of law by concluding that the TIP deduction or reduction violated §§ 2(3), 6(1), and 8(1) of the PWFBA. Under § 2(1)(a), MCL 408.472(1)(a), "wages earned" during the first 15 days of a month must be paid on or before the first day of the next month. Under § 2(1)(b), MCL 408.472(1)(b), "wages

earned" from the sixteenth day through the last day of a month must be paid on or before the fifteenth day of the next month. Section 2(3) authorizes payment of wages earned under a biweekly payment schedule. MCL 408.472 is not violated in this case because the PWFBA must be read as a whole and the provisions of § 2 are subject to other provisions of the act. As discussed, because a CBA authorized the deduction or reduction, it is permitted by § 7(1). Furthermore, the deduction concerns a fringe benefit bonus that is not "earned" until an employee retires or resigns and is authorized by MCL 408.474. Consequently, the hearings officer and the circuit court erred by concluding that the TIP deduction or reduction violated § 2(3) of the PWFBA, MCL 408.472(3).

For similar reasons, there is no basis to conclude that the TIP deduction or reduction constitutes a violation of § 6(1), MCL 408.476(1), regarding the manner and method of paying wages. And similarly, § 8(1), MCL 408.478(1), prohibiting an employer from demanding a fee, gift, tip, or gratuity, or other remuneration as a condition of employment or continued employment, has not been violated. The TIP deduction or reduction involves a deferred bonus, not an illegal fee, gift, tip, or gratuity as consideration for employment or continuation of employment.

For all the reasons discussed, we conclude that the hearings officer and the circuit court erred as a matter of law by ruling that the TIP deduction or reduction violated the PWFBA. We therefore reverse the order of the circuit court, vacate the decision of the hearings officer, and remand this matter to the hearings officer for entry of an order or orders dismissing appellees' complaints. These conclusions and resolution render the other issues appellants raise moot.

We reverse the circuit court's order, vacate the decision of the hearings officer, and remand this matter to the hearings officer for entry of an order or orders dismissing appellees' complaints. Because these appeals presented questions of public policy, we award no taxable costs pursuant to MCR 7.219. We do not retain jurisdiction.

BOONSTRA, P.J., and MARKEY and K. F. KELLY, JJ., concurred.