# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Keillor, Minors.

FOR PUBLICATION
June 28, 2018

No. 340395
Wayne Circuit Court
Juvenile Division
LC No. 16-523730-NA

Before: RONYANE KRAUSE, P.J., and MARKEY and RIORDAN, JJ.

MARKEY, J. (*dissenting*).

I must dissent in respect to both the majority and concurring opinions. I do not accept the majority's statutory interpretation legerdemain by which "stomach" is added to the statutory definition of "intimate parts" under the aliases of "groin" and "inner thigh" and/or to make it synonymous with any of those words. "In determining the Legislature's intent, we must first look to the language of the statute itself." *In re MKK*, 286 Mich App 546, 556; 781 NW2d 132 (2009). Further, the Legislature is presumed to "be aware of the consequences of its use or omission of statutory language." *Id*. Judges may not read into a clear statute that which is not within the manifest intention of the Legislature as derived from the language of the statute itself. *People v Breidenbach*, 489 Mich 1, 10; 798 NW2d 738 (2011). Further, clear statutory language must be enforced as written. *Velez v Tuma*, 492 Mich 1, 16-17; 821 NW2d 432 (2012). The Legislature did not include "stomach" in its list of sexually "intimate parts" in MCL 750.520a(f), and this Court may not add it to the statute to reach a desired result in this case. The majority's opinion does exactly that. Consequently, for this reason and for others discussed *infra*, I conclude that the trial court clearly erred and would vacate the trial court's order and remand this case to the trial court for further proceedings.

## I. STANDARDS OF REVIEW

This Court reviews for clear error the trial court's factual findings regarding both the statutory grounds to terminate parental rights and the trial court's findings regarding the best interests of the children. MCR 3.977(K); *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000); *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). To be clearly erroneous, a decision must be more than maybe or probably wrong. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). This Court will determine a finding is clearly erroneous only when left with the definite and firm conviction that a mistake has been made. *Id.*

This case also presents an issue of statutory interpretation, which this court reviews de novo. *In re Harper*, 302 Mich App 349, 352; 839 NW2d 44 (2013). "The interpretation and

-1-

application of a statute in particular circumstances is a question of law this Court reviews de novo." *Detroit Public Schools v Conn*, 308 Mich App 234, 246; 863 NW2d 373 (2014).

## II. ANALYSIS

I conclude that the court clearly erred by finding that MCL 712A.19b(3)(b)(*iii*) was proved by clear and convincing evidence. Because this Court must recognize the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it, MCR 2.613(C); *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989), I accept KK-1's testimony as credible for purposes of my analysis. Her testimony, however, did not establish "sexual abuse" within the meaning of § 19b(3)(b)(*iii*), and the trial court clearly erred in so finding. Further, the erroneous finding of sexual abuse by a nonparent residing in respondent's home is so intertwined with the trial court's finding under MCL 712A.19b(3)(j) of likely harm if the children were returned to respondent's care, that it renders this finding also clearly erroneous. So even if terminating respondent's parental rights were in the children's best interests, MCL 712A.19b(5), at least one statutory ground for termination must still be proved by clear and convincing evidence to support such an order. MCL 712A.19b(3); *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003) ("A due-process violation occurs when a state-required breakup of a natural family is founded solely on a 'best interests' analysis that is not supported by the requisite proof of parental unfitness.").[1] I therefore conclude that the trial court's order terminating respondent's parental rights must be vacated.

The trial court found clear and convincing evidence of statutory ground for termination under MCL 712A.19b(3)(b)(*iii*), which provides:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> * * *
>
> (*iii*) A nonparent adult's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse by the nonparent adult in the foreseeable future if placed in the parent's home.

Although MCL 712A.19b does not provide definitions for the pertinent terms "nonparent adult" and "sexual abuse," those terms are found and defined in the Child Protection Law, MCL 722.601 *et seq*. Indeed, § 19b twice refers to and adopts the definition of "sexual abuse" "as that term is defined in section 2 of the child protection law, 1975 PA 238, MCL 722.622." MCL 712A.19b(3)(k)(*ix*) and (*l*)(ix).

MCL 722.622(y) defines "sexual abuse" as follows:

---

[1] Adoptive parents have all the same rights and responsibilities as if they were natural parents. MCL 710.60(1); *Wilson v King*, 298 Mich App 378, 381-382; 827 NW2d 203 (2012).

"Sexual abuse" means engaging in sexual contact or sexual penetration as those terms are defined in section 520a of the Michigan penal code, 1931 PA 328, MCL 750.520a, with a child.

In this case, there is no allegation of sexual penetration, so only "sexual contact" potentially is at issue. The definition of "sexual contact" is as follows:

"Sexual contact" includes the intentional touching of the victim's or actor's *intimate parts* or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, *if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification*, done for a sexual purpose, or in a sexual manner for:

(*i*) Revenge.

(*ii*) To inflict humiliation.

(*iii*) Out of anger. [MCL 750.520a(q); Emphasis added.]

In turn, MCL 750.520a(f) defines "intimate parts" as "includ[ing] the primary genital area, groin, inner thigh, buttock, or breast of a human being."

In light of these unambiguous statutory terms, establishing "sexual abuse" as used in MCL 712A.19b(3)(b)(*iii*) requires clear and convincing evidence that the nonparent adult respondent, here, Mr. H, intentionally touched KK-1's "intimate parts"—"the primary genital area, groin, inner thigh, buttock, or breast," or the clothing covering her intimate parts, and such touching can reasonably be construed to have been for a sexual purpose or other purpose prohibited by the statute. In this case, accepting KK-1's testimony as credible, I note that the evidence showed Mr. H did not touch KK-1's "primary genital area, groin, inner thigh, buttock, or breast" or her clothing covering those intimate parts. Indeed, KK-1 herself testified that Mr. H rubbed her stomach and her abdomen after KK-1 had said her stomach hurt. She testified that she pulled Mr. H's hand out and that the touching made her feel uncomfortable. She got up and went to the bathroom. She testified that when she came back, Mr. H started to rub her back, but she asked him to stop. She testified that he immediately complied. This is the total extent of the facts underlying the sole claim of sexual abuse or contact.

When specifically asked if Mr. H had touched her "private parts," KK-1 answered, "Almost." She explained, "Like he was right there, but then I pulled his hand out and I went to the top bunk." On cross-examination, KK-1 said that she thought Mr. H was moving his hand toward her "private parts," but he never got it there. In sum, there was no testimony whatsoever to find that Mr. H touched KK-1's "intimate parts," MCL 750.520a(f). Patently, neither the trial court nor this court may speculate or infer conduct or intent from the record evidence—the majority and the concurrence do just that in reaching their respective decisions. Consequently, it was clear error to find that "sexual abuse" within the meaning of MCL 712A.19b(3)(b)(*iii*) occurred because there was a lack of evidence that "sexual contact" occurred. See MCL 722.622(y); MCL 750.520a(q).

Moreover, because there was no evidence that Mr. H touched KK-1's "intimate parts" as required by the statute, there also was no evidence to show either that the touching that KK-1 described was for a sexual purpose, or to support an inference that the touching was to exact revenge, to humiliate, or out of anger. Rather, the touching or rubbing of KK-1's stomach area occurred only after she complained that her stomach hurt. While the touching may have made KK-1 uncomfortable-- and given her age, that's understandable--there was no evidence that Mr. H intended to cause that reaction instead of intending to comfort KK-1. She had just complained that her stomach was hurting. I also note the very important fact that Mr. H was in his late 60's at the time and had lived with respondent and the children by then for many years, indeed, most of their lives. Notably, no other incidents of any similar nature were ever alleged either before or after this one that was raised late in the proceedings and about which KK-1 testified. Consequently, there was no clear and convincing evidence that the touching that KK-1 described was for one of the prohibited statutory purposes. MCL 750.520a(q). For this reason it was also clear error to find that "sexual abuse" within the meaning of MCL 712A.19b(3)(b)(*iii*) occurred—there was a lack of evidence that the touching was for a sexual or other prohibited purpose. See MCL 722.622(y); MCL 750.520a(q).

And, again, KK-1 testified that the touching she described was a single incident that had never happened before and that never happened again. To establish MCL 712A.19b(3)(b)(*iii*) as a ground for termination, the court must find by clear and convincing evidence that "there is a reasonable likelihood that the child will suffer from . . . [sexual] abuse by the nonparent adult in the foreseeable future if placed in the parent's home." KK-1's testimony described a single touching that she stated had happened once—never before and never since. Parenthetically, I also point out that KK-1's sister had never made such accusations against Mr. H despite living with him most of her life as well. Under these facts, I find no basis to conclude by clear and convincing evidence that such an incident—were it in some way even fairly determined to have been sexual abuse by a nonparent adult—would be likely to recur in the future.

Additionally, the allegations of sexual abuse did not arise until late in the proceedings, according to the supplemental petition at the end of April 2017. The supplemental petition seeking termination on the basis of the new sexual abuse allegations was filed on May 8, 2017, and not authorized until a May 22, 2017 pretrial hearing, at which time respondent and Mr. H were served with it. At the time of the pretrial, respondent had not been permitted to visit the children for seven months, initially because the court temporarily suspended visitation pending a psychological examination but later because the children refused to participate, and the court did not order them do so despite their young ages. Nevertheless, respondent was unquestionably fully compliant with all court orders and with service provider's treatment plans. In its oral findings after trial, the trial court noted:

> And so, obviously, this is a very difficult case in the sense that the mother is compliant with the service plan, but because of the fact that the children won't engage in therapy, they won't engage in activities with the mother, they refuse to return home, they refuse to see the mother, we're not able to reunify. And so, the Court, the Court has to be mindful of that, that notwithstanding the fact that the mother's compliant, a case just can't go on in perpetuity without, without having a permanency plan and some direction.

At trial, respondent testified that if necessary, she would establish a household separate from Mr. H, either by having him move out of the home they owned together or by finding new housing for herself and the children. Specifically, respondent testified that she would separate from Mr. H if necessary to obtain the return of the children. Respondent, however, was never directed to establish a separate home for herself as a condition of having the children returned to her, nor was that issue even discussed with her. So a finding of likely future harm from Mr. H, i.e., that he posed a potential threat to the children, was patently premature where the evidence showed a one-time incident, and respondent expressed her willingness to establish a household without Mr. H were that to be a condition for her children's return.

Here, the trial court's finding regarding likely harm under § 19b(3)(j) if the children were returned to respondent's care is so intertwined with the court's erroneous finding of sexual abuse by a nonparent residing in respondent's home that it also is clearly erroneous. MCL 712A.19b(3)(j) provides a ground for termination of parental rights if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

On this statutory ground, I also part company with the concurring opinion. In its oral opinion from the bench, the trial court stated that MCL 712A.19b(3)(j) "is also proven by clear and convincing evidence because we have testimony of sexual abuse by the non-parent adult and we have testimony of physical abuse to the child, [KK-1]." But it is settled law that a court speaks through its written orders, not through its oral pronouncements. *In re KMN*, 309 Mich App 274, 287; 870 NW2d 75 (2015). And, in its written order terminating parental rights, the trial court wrote:

> It is further ordered that the court finds clear and convincing evidence of a statutory basis for termination of parental rights of the mother pursuant to MCL 712a.19b(3)(b)(*iii*) and (j). The mother's living together partner sexually abused the child [KK-1], and future abuse is reasonably likely as the non-parent adult has not come forward to engage in services. Further, the non-parent adult continues to reside in the home of the mother.

> In addition, the children will be harmed if returned to the home of the mother, given that the non-parent adult continues to reside in that home. While the mother is compliant with services, the children refuse to engage with the mother in any activities, and they refuse to return home.

Clearly, in it its written order and findings of fact, the trial court relied only on the alleged sexual abuse by a nonparent adult to find both statutory grounds for termination. In her concurring opinion, Judge Krause takes on the role of the trial court—here, relying in large part on facts that apparently had no impact whatsoever on the trial court's written analysis and findings: that respondent, not Mr. H, has previously pled no contest to a charge of child abuse for striking a child with an electrical cord. I suggest that the trial court did not focus on that issue in its order because not only did respondent take full responsibility, she also presented and apparently convinced those providing services and the court that she understood her mistake and clearly conveyed that she had learned from it. Thus, to cite it as a reason to terminate would've been erroneous. In short, it was patently a non-issue at the point of hearing and had been superseded

by the allegation against Mr. H. To now bootstrap that factor as *the* reason to terminate and remove these children from respondent in lieu of remanding for a fair and proper hearing when the trial court did not, is to me far beyond our role as appellate court judges.

The trial court's finding that clear and convincing evidence supported finding MCL 712A.19b(3)(j) as a ground for termination of respondent's parental rights is clearly erroneous. MCR 3.977(K); *In re Olive/Metts Minors*, 297 Mich App at 40. First, this finding is premised on the findings that Mr. H perpetrated "sexual abuse" on KK-1 and that KK-1 was likely to be sexually abused in the future by Mr. H. For the reasons already discussed, these premises are not supported by clear and convincing evidence, much less any evidence!

Moreover, this finding is based on the additional premise that Mr. H would remain in respondent's home. But respondent, who had fully complied with all other requirements of the court, offered to establish a home for the children without Mr. H if the court required it as a condition. But respondent was never directed or even advised to do so. So the court's finding of likely harm to the children from Mr. H if returned to respondent was patently not supported by clear and convincing evidence. MCR 3.977(K). The finding regarding § 19b(3)(j) was more than probably wrong, *In re Williams*, 286 Mich App at 271, the legal premise on which it was based, "sexual abuse" by Mr. H was not supported by any evidence. Further, the "conduct or capacity" of respondent showed that she would abide by the court's direction and would remove Mr. H from her home if directed to do so.

Where, as in this case, petitioner sought termination of parental rights on grounds different from those by which the court originally gained jurisdiction (physical abuse), it is petitioner's burden to prove "on the basis of clear and convincing legally admissible evidence that one or more of the facts alleged in the supplemental petition." MCR 3.977(A)(3), (F)(1)(b). The petitioner bears the burden of establishing the existence of at least one of the grounds for termination of parental rights listed in MCL 712A.19b(3) by clear and convincing evidence. *In re JK*, 468 Mich at 210. In this case, petitioner asserted one ground for termination of parental rights: sexual abuse of KK-1 by respondent and by respondent's housemate, Mr. H. But the evidence utterly failed to show any sexual abuse by respondent, and the testimony with respect to Mr. H was legally insufficient to establish sexual abuse within the meaning of MCL 712A.19b(3)(b)(*iii*). See MCL 722.622(y); MCL 750.520a(q); MCL 750.520a(f). The trial court's finding regarding likely harm under MCL 712A.19b(3)(j) if the children were returned to respondent's care is so dependent on the court's erroneous finding of sexual abuse by a nonparent residing in respondent's home that it also is clearly erroneous. The trial court's decision to terminate, in fact, seems to be based solely on its conclusion that because the children refused to engage in any way with treatment or respondent, its only option was to terminate respondent's parental rights. It should go without saying that such a determination as a basis for termination of parental rights has no legal basis whatsoever and is a remarkable judicial assault on the parent/child relationship. Many, if not most children, go through a defiant period while maturing: KK-1 was about thirteen during these proceedings. To cite such defiance in pre-teen and barely teenage children as the main reason for terminating parental rights is patently wrong and for us to let it stand, dangerous. Because the evidence did not establish at least one ground for termination of respondent's parental rights, MCL 712A.19b(3), the trial court clearly erred by terminating respondent's parental rights. *In re JK*, 468 Mich at 210; *In re Olive/Metts Minors*, 297 Mich App at 40.

Terminating parental rights and removing children from their parent's care is an enormous responsibility and one which should be undertaken with scrupulous regard to the laws that provide the strict criteria that must be followed. Because the trial court here clearly failed to properly follow the statutory requirements in terminating respondent's parental rights, I would vacate the trial court's order terminating respondent's parental rights and remand this matter to the trial court for further proceedings. I fail to see how remanding for a second hearing under these unusual facts and legal conclusions is anything but a bottom line threshold to ensure the fair and proper proceedings respondent and these children deserve.

/s/ Jane E. Markey