# STATE OF MICHIGAN

# COURT OF APPEALS

CHARTER TOWNSHIP OF YORK,

        Plaintiff/Counter-Defendant-
        Appellant,

v

DONALD MILLER, KATHERINE NULL, and
DAVID MILLER,

        Defendants/Counter-Plaintiffs-
        Appellees.

FOR PUBLICATION
January 18, 2018
9:00 a.m.

No. 335344
Washtenaw Circuit Court
LC No. 15-000847-CZ

Before: MURPHY, P.J., and SAWYER and BECKERING, JJ.

PER CURIAM.

Plaintiff appeals as of right from the trial court judgment that declared that plaintiff could not enforce its zoning ordinance's prohibition against outdoor growing of medical marijuana because the ordinance conflicted with the provisions of the Michigan Medical Marihuana Act, MCL 333.26421 *et seq*. (MMMA), and therefore, was preempted. We affirm.

Defendants, David Miller and Donald Miller, are brothers who resided together at Donald's home located in Milan, Michigan, in York Township. Both were qualified medical marijuana patients. Defendant, Katherine Null, formerly in a long term relationship with David, also was a qualified medical marijuana patient, and she served as David's registered medical marijuana primary caregiver. Null rented a bedroom from Donald, but she did not reside with the Millers. During 2014, Null directed David to construct a medical marijuana structure in Donald's backyard for containing the cultivation of medical marijuana for patients connected to Null through registration under the MMMA. Starting in July 2015, Null rented space on Donald's property for that purpose. Defendants failed to obtain a construction permit for the medical marijuana outdoor growing facility, never got permits before installing an electrical and watering system, and never obtained a certificate of occupancy.

Under the Michigan Zoning Enabling Act, MCL 125.3101 *et seq*. (MZEA), plaintiff adopted its zoning ordinance regulations for land development and use for the public health, safety, and welfare of the local community. Use of property by a medical marijuana caregiver was permitted only under Charter Township of York Zoning Ordinance (Zoning Ordinance) § 40.204 as a "Home Occupation" defined as:

-1-

An occupation or profession customarily conducted entirely within a dwelling by the persons residing within the dwelling and not more than one person who does not reside within the dwelling, and where such use is clearly incidental to the principal use of the dwelling as a residence.

Medical marijuana caregivers were required to comply with Zoning Ordinance §§ 40.204(A)(13)(e) and (f) for marijuana use and cultivation:

(e) All medical marihuana shall be contained within the main building in an enclosed, locked facility inaccessible on all sides and equipped with locks or other security devices that permit access only by the registered primary caregiver or qualifying patient, as reviewed and approved by the Building Official;

(f) All necessary building, electrical, plumbing, and mechanical permits shall be obtained for any portion of the residential structure in which electrical wiring, lighting and/or watering devices that support the cultivation, growing, or harvesting of marihuana are located[.]

Plaintiff learned that defendants built their medical marijuana facility outdoors that failed to comply with zoning and construction regulations. Instead of enforcing its zoning ordinance regulations, plaintiff filed a declaratory judgment action seeking the trial court's determination of the validity of its zoning and construction regulations and its right to enforce them as they applied to the cultivation and use of medical marijuana in zoned residential locations and subdivisions.

Before filing their respective motions for summary disposition, the parties stipulated to the essential facts. They agreed that defendants' medical marijuana use failed to comply with plaintiff's home occupation zoning ordinance because Null did not reside at Donald's property and defendants grew medical marijuana outside and not entirely within Donald's house. They agreed that, except for defendants' zoning and construction code violations, defendants' medical marijuana use and their outdoor growing facility complied with the MMMA. The parties stipulated that defendants' violations of plaintiff's zoning ordinances and construction code regulations constituted nuisances per se subject to penalties including injunctive relief and abatement.

Plaintiff argued in its motion for summary disposition that under the MZEA it had broad authority to prohibit outdoor medical marijuana growing. Defendants countered that the MMMA preempted plaintiff's home occupation zoning ordinance because it directly conflicted with the MMMA. The trial court ruled that direct conflicts existed between the MMMA and plaintiff's ordinance. The trial court found that the Legislature amended the MMMA during 2012 specifically to permit outdoor cultivation and held that plaintiff's ordinance conflicted by allowing medical marijuana growing only as an indoor home occupation. Further, the trial court held that plaintiff's ordinance also conflicted because the MMMA did not require Null to live on the premises where the marijuana was grown. The trial court ruled that plaintiff could not exclude outdoor cultivation because the MMMA permitted doing so. The trial court ruled further that defendants' structure was subject to construction regulations and zoning so long as the zoning did not forbid outdoor cultivation of medical marijuana. The trial court ordered

defendants to seek the required permits and ordered plaintiff to review and grant the permits if defendants' structure complied with the building code. Plaintiff now appeals.

Plaintiff first argues that its authority under the MZEA to adopt ordinances permitted it to regulate medical marijuana and restrict registered caregivers' marijuana growing to indoors in areas zoned residential. We disagree.

"Whether a state statute preempts a local ordinance is a question of statutory interpretation and, therefore, a question of law that we review de novo." *Ter Beek v City of Wyoming (Ter Beek I)*, 297 Mich App 446, 452; 823 NW2d 864 (2012), aff'd *Ter Beek v City of Wyoming*, 495 Mich 1; 846 NW2d 531 (2014) (*Ter Beek II*). We also review "de novo a decision to grant or deny a declaratory judgment; however, the trial court's factual findings will not be overturned unless they are clearly erroneous." *Id*. Findings of fact are clearly erroneous where no evidentiary support exists or if this Court is left with a definite and firm conviction that a mistake has been made. *Trahey v City of Inkster*, 311 Mich App 582, 593; 876 NW2d 582 (2015).

"Under Const 1963, art 7, § 22, a Michigan municipality's power to adopt resolutions and ordinances relating to municipal concerns is 'subject to the constitution and law'." *People v Llewellyn*, 401 Mich 314, 321; 257 NW2d 902 (1977). "Michigan is strongly committed to the concept of home rule, and constitutional and statutory provisions which grant power to municipalities are to be liberally construed." *Bivens v Grand Rapids*, 443 Mich 391, 400; 505 NW2d 239 (1993). Local governments, however, may exercise reasonable control to regulate matters of local concern only in a manner and to the degree that the regulation does not conflict with state law. *City of Taylor v Detroit Edison Co*, 475 Mich 109, 117-118; 715 NW2d 28 (2006).

The MZEA provides in relevant part that

A local unit of government may provide by zoning ordinance for the regulation of land development and . . . regulate the use of land and structures . . . to ensure that use of the land is situated in appropriate locations and . . . to promote public health, safety, and welfare. [MCL 125.3201(1).]

The dispositive issues in this case were whether the MMMA permits outdoor medical marijuana growing, and if so, whether it preempted plaintiff's zoning regulation prohibiting outdoor growing in residential areas. A panel of this Court explained in *Ter Beek I*, 297 Mich App at 453, that

[a] city ordinance that purports to prohibit what a state statute permits is void. A state statute preempts regulation by an inferior government when the local regulation directly conflicts with the statute or when the statute completely occupies the regulatory field. A direct conflict exists between a local regulation and state statute when the local regulation prohibits what the statute permits. [Citations and quotation marks omitted.]

In this case, Zoning Ordinance § 40.204 restricted home occupations and home-based businesses. Within the context of a home occupation, plaintiff specifically regulated registered

medical marijuana caregivers. Section 40.204(13) permitted such caregivers to operate as a "home occupation" if they complied with the MMMA and certain specified restrictions, some of which are not relevant to the issues on appeal. Pertinent to this case, § 40.204(13)(e) required that all medical marijuana was contained inside the house in residential zoned areas. Under § 40.204(13)(e), caregivers were prohibited from having or growing any medical marijuana outside the house on properties zoned residential. Section 40.204(13)(f) required permits for modification of any portion of the house for cultivation, growing, or harvesting of marijuana. Read together, § 40.204(13), subparts (e) and (f) only permitted medical marijuana growing exclusively indoors.

Zoning Ordinance § 3.13 permitted plaintiff to penalize property owners for nonconforming uses. Plaintiff could declare such uses a nuisance and require any structure to be vacated, torn down, removed from the property, or abated with the cost of abatement attaching as a lien on the property. Defendants' violation of plaintiff's home occupation zoning ordinance, therefore, held serious penalties.

The MMMA governs medical marijuana use. Under MCL 333.26427(a), the "medical use of marihuana is allowed under state law to the extent that it is carried out in accordance with the provisions of this act." MCL 333.26423(f)[1] defined the term "medical use" to include:

> the acquisition, possession, cultivation, manufacture, extraction, use, internal possession, delivery, transfer, or transportation of marihuana, or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition.

The MMMA does not define the term "cultivation."

The MMMA provides immunity from arrest, prosecution, and penalties in any manner, and prohibits the denial of any rights or privileges to qualifying medical marijuana patients and registered primary caregivers. See MCL 333.26424(a) and (b); *People v Hartwick*, 498 Mich 192, 210-221; 870 NW2d 37 (2015). MCL 333.26424(b)(2) permits registered caregivers to cultivate 12 marijuana plants for each qualifying patient in an enclosed, locked facility. MCL 333.26423(d) permits medical marijuana growing only in an "enclosed, locked facility" including outdoor growing if done as specified.

Before 2012, MCL 333.26423 did not mention or regulate outdoor growing but defined the term "enclosed, locked facility" in Subpart (c) only as "a closet, room, or other enclosed area equipped with locks or other security devices that permit access only by a registered primary caregiver or registered qualifying patient." The Legislature changed Subpart (c) to Subpart (d)

---

[1] On December 20, 2016, the Legislature amended MCL 333.26423(f)'s definition of the term "medical use." Now MCL 333.26423(h) defines the term "medical use of marihuana" substantially similarly to former Subpart (f)'s definition with the addition of the terms "extraction" and "marihuana-infused products" to the definition.

and amended it by adding requirements for growing medical marijuana outdoors. Since the amendment, MCL 333.26423(d) provides in relevant part as follows:

> "Enclosed, locked facility" means a closet, room, or other comparable, stationary, and fully enclosed area equipped with secured locks or other functioning security devices that permit access only by a registered primary caregiver or registered qualifying patient. Marihuana plants grown outdoors are considered to be in an enclosed, locked facility if they are not visible to the unaided eye from an adjacent property when viewed by an individual at ground level or from a permanent structure and are grown within a stationary structure that is enclosed on all sides, except for the base, by chain-link fencing, wooden slats, or a similar material that prevents access by the general public and that is anchored, attached, or affixed to the ground; located on land that is owned, leased, or rented by either the registered qualifying patient or a person designated through the departmental registration process as the primary caregiver for the registered qualifying patient or patients for whom the marihuana plants are grown; and equipped with functioning locks or other security devices that restrict access to only the registered qualifying patient or the registered primary caregiver who owns, leases, or rents the property on which the structure is located.

MCL 333.26424(b)(2) and MCL 333.26423(d) are *in pari materia* and must be read together as one law because they are different provisions of a statute that relate to the same subject matter. *Ter Beek I*, 297 Mich App at 462. Read together, MCL 333.26424(b)(2) and MCL 333.26423(d) permit growing medical marijuana outdoors by registered caregivers as long as the growing occurs within an enclosed, locked facility as specified. The MMMA also provides that other state law inconsistent with the MMMA may not interfere with the rights established under the MMMA. Under MCL 333.26427(e), "All other acts and parts of acts inconsistent with this act do not apply to the medical use of marihuana as provided for by this act."

In this case, plaintiff's home occupation ordinance § 40.204(13), subparts (e) and (f) plainly purport to prohibit the outdoor growing of medical marijuana that the MMMA otherwise permits. Plaintiff's prohibition effectively denied registered caregivers the right and privilege that MCL 333.26424(b) permits in conjunction with MCL 333.26423(d). Accordingly, under *Ter Beek I*, 297 Mich App at 453, plaintiff's prohibition against medical marijuana outdoor growing by a registered caregiver directly conflicts with the MMMA. Further, enforcement of plaintiff's home occupation ordinance would result in the imposition of penalties against persons like defendants that the MMMA does not permit. See MCL 333.26424(b); see also *Ter Beek I*, 297 Mich App at 454-456. Contrary to plaintiff's contention, "local zoning regulation enacted pursuant to the MZEA does not save it from preemption." *Ter Beek I*, 495 Mich 21-22. Therefore, plaintiff's zoning ordinance's prohibition of registered caregivers' outdoor medical marijuana growing directly conflicted with the MMMA by prohibiting what the MMMA permitted. Consequently, the ordinance was void and preempted by the MMMA. *Ter Beek I*, 297 Mich App at 457.

Plaintiff next essentially contends that the trial court's interpretation of MCL 333.26423(d) broadly immunized registered caregivers from zoning and construction

regulations. Plaintiff's argument disregards the principles of statutory construction and disregards the trial court's ruling that defendants' enclosed, locked facility must comply with construction regulations and plaintiff's zoning ordinance building permit requirements.

In *People v Bylsma*, 315 Mich App 363, 377-378; 889 NW2d 729 (2016), this Court recognized that the MMMA was a voter-initiated statute and we applied the rule of statutory construction that the words of an initiative law are given their ordinary and customary meaning as would have been understood by the voters. We instructed that if the MMMA's "statutory language is unambiguous, . . . [n]o further judicial construction is required or permitted because we must conclude that the electors intended the meaning clearly expressed." *Id*. at 378. "Judicial construction of a statute is only permitted when statutory language is ambiguous," and ambiguity exists "only if it creates an irreconcilable conflict with another provision or it is equally susceptible to more than one meaning." *Noll v Ritzer (On Remand)*, 317 Mich App 506, 511; 895 NW2d 192 (2016).

Similarly, when courts interpret statutes created by the Legislature, they must first look to the specific statutory language to determine the Legislative intent. If the language is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted. *Universal Underwriters Ins Group v Auto Club Ins Ass'n*, 256 Mich App 541, 544; 666 NW2d 294 (2003). We explained in *Detroit Pub Schs v Connecticut*, 308 Mich App 234, 247-248; 863 NW2d 373 (2014), the framework for statutory construction:

> When interpreting a statute, our goal is to give effect to the intent of the Legislature. The language of the statute itself is the primary indication of the Legislature's intent. If the language of the statute is unambiguous, we must enforce the statute as written. This Court reads the provisions of statutes reasonably and in context, and reads subsections of cohesive statutory provisions together.
>
> * * *
>
> [N]othing may be read into a statute that is not within the intent of the Legislature apparent from the language of the statute itself. Courts may not speculate regarding legislative intent beyond the words expressed in a statute. Hence, nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself. [Citations and quotation marks omitted.]

In relation to defining the term "enclosed, locked facility," MCL 333.26423(d) the Legislature amended the provision to include regulation of marijuana plants grown outdoors. Nothing in the plain language of MCL 333.26423(d) suggests any ambiguity that would necessitate judicial construction to decipher its meaning. Moreover, when MCL 333.26423(d) is read together with MCL 333.26424(b), no irreconcilable conflict results that makes either statutory provision susceptible to more than one meaning. Read together, we conclude that the MMMA permits growing medical marijuana outdoors by registered caregivers as long as the growing occurs within the specified enclosed, locked facility.

The record in this case reflects that the trial court essentially read the plain language of the MMMA and held that the MMMA permitted growing medical marijuana outdoors. The trial court recognized that the Legislature amended MCL 333.26423(d) to redefine the meaning of "enclosed, locked facility" to include structures enclosing outdoor growing of medical marijuana under specific requirements. We do not conclude that the trial court clearly erred by finding that the Legislature amended the MMMA to permit outdoor cultivation. We believe that the trial court reasonably inferred that the Legislature changed the MMMA to permit and regulate outdoor growing facilities. As such, it authorized outdoor growing of medical marijuana under specific requirements.

The trial court read the plain language of MCL 333.26423(d) and simply concluded that the MMMA permitted what plaintiff's home occupation zoning ordinance expressly prohibited. The trial court did not find ambiguity and did not judicially construe MCL 333.26423(d) in search of its meaning. We also do not find any inherent ambiguity necessitating judicial construction. Therefore, the trial court did not err by applying the plain language of the MMMA to resolve the case.

We also believe that the trial court correctly held that defendants' enclosed, locked facility must comply with MCL 333.26423(d), construction regulations, and plaintiff's construction permit requirements. Contrary to plaintiff's contention, the trial court's ruling did not grant defendants immunity and exemption from all zoning and construction regulations. We believe that the trial court narrowly tailored its ruling to resolve the issues presented in this case and yet upheld plaintiff's power to regulate the public health and safety respecting construction of structures. Accordingly, the trial court did not err.

Plaintiff next argues that the MMMA's "medical use" and "enclosed, locked facility" definitions' silence regarding the specific manner and location for cultivating medical marijuana permitted plaintiff to prohibit cultivation by zoning ordinance regulation. We disagree.

This Court explained in *Detroit Pub Schs*, 308 Mich App at 247-248, that statutory construction requires giving effect to the intent of the Legislature based upon the language of the statute itself. Courts must enforce statutes as written by reading the subsections of cohesive statutory provisions together without reading into the statute anything that is not within the manifest intent of the Legislature. Further, as explained in *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009), correct interpretation of a statutory scheme like the MMMA requires (1) reading the statute as a whole, (2) reading the statute's words and phrases in the context of the entire legislative scheme, (3) considering both the plain meaning of the critical words and phrases along with their placement and purpose within the statutory scheme, and (4) interpreting the statutory provisions in harmony with the entire statutory scheme. Courts should not intuit legislative intent from the absence of action by the Legislature, but interpret statutes based upon what the Legislature actually enacted. *McCahan v Brennan*, 492 Mich 730, 749; 822 NW2d 747 (2012). As the Michigan Supreme Court has explained, the "legislature legislates by legislating, not by doing nothing, not by keeping silent." *Id*.

In this case, we read and interpret the MMMA as a whole. We conclude as the trial court did that the MMMA permits and thereby authorizes registered caregivers to grow medical marijuana for their patients both indoors and outdoors without fear of imposition of penalties by

a local government. Contrary to plaintiff's argument, the Legislature's silence regarding authorizing the specific location of a caregiver's right and privilege to cultivate medical marijuana may not be relied upon for the conclusion that plaintiff may prohibit caregivers from outdoor cultivation. *Id*.

MCL 333.26423(d) inherently provides that caregivers may elect to grow medical marijuana outdoors so long as they comply with the enclosed, locked facility requirements. MCL 333.26424(b)(2) and MCL 333.26423(d), when read together, grant registered caregivers the right and privilege to grow medical marijuana outdoors without fear of local government's imposition of penalties. As explained in *Ter Beek II*, 495 Mich at 20, an ordinance "directly conflicts with the MMMA by permitting what the MMMA expressly prohibits—the imposition of a 'penalty in any manner' on a registered" caregiver whose medical marijuana use, i.e. cultivation, falls within the scope of MCL 333.26424(b)'s immunity.

Notably, the MMMA does not grant municipalities authority to adopt ordinances that restrict registered caregivers' rights and privileges under the MMMA. By comparison, the Legislature recently enacted the medical marijuana facilities licensing act, MCL 333.27101 *et seq*., and specifically granted municipalities authority to adopt local ordinances including zoning regulations that restrict the location, number, and type of facilities within its boundaries. See MCL 333.27205. Obviously, had the Legislature intended to authorize municipalities to adopt ordinances restricting registered medical marijuana caregivers through zoning ordinances, it could have done so in the MMMA. Despite amending the MMMA twice, the Legislature refrained from incorporating such provision in the MMMA. Plaintiff's insistence on reading into the MMMA what plainly the statutory scheme fails to provide lacks merit. Accordingly, the trial court did not err by reading the MMMA as a whole and concluding that plaintiff could not infringe upon registered medical marijuana caregivers' rights and privileges granted under the MMMA.

Lastly, plaintiff argues a number of angles for reversing the trial court's decision that the MMMA preempted its home occupation zoning ordinance. All of them lack merit.

As explained above, the trial court read the MMMA as a whole, analyzed its plain language, and interpreted MCL 333.26424(b)(2) and MCL 333.26423(d) and other MMMA provisions in a reasonable and harmonious manner to conclude that plaintiff's home occupation ordinance prohibited what the MMMA permitted. Therefore, the trial court correctly ruled that a direct conflict existed resulting in the MMMA's preemption of plaintiff's ordinance.

Plaintiff asserts that the trial court erred because the MMMA does not preempt its ordinance by occupying the field of zoning and construction code regulations. The trial court, however, never held that the MMMA preempted zoning and construction code regulations. In fact, the trial court specifically held that construction code regulations and plaintiff's building permit regulations applied to defendants' outdoor structure. Consequently, it ordered defendants to obtain all requisite permits for their outdoor medical marijuana enclosed, locked facility. Accordingly, plaintiff's argument lacks merit.

Plaintiff also argues that its home occupation ordinance did not directly conflict with the MMMA. As explained above, plaintiff's ordinance directly conflicted with the MMMA because

it prohibited what the MMMA clearly permits, and therefore, the ordinance was void and preempted. We also believe that the trial court could have held that the MMMA preempted plaintiff's ordinance because plaintiff's enforcement of its home occupation zoning ordinance would result in the imposition of penalties upon qualified patients and registered caregivers directly conflicting with the immunity that MCL 333.26424(a) and (b) grants them.

Plaintiff argues further that its ordinance was not preempted by the MMMA because plaintiff merely adopted additional requirements for medical marijuana cultivation that were not unreasonable and only served to prevent purported nuisances in residential neighborhoods. Plaintiff again relies on the MZEA for its authority to regulate medical marijuana cultivation and prohibit outdoor growing in zoned residential areas. As we explained above, the MZEA does not save plaintiff's ordinance from preemption. See *Ter Beek II*, 495 Mich 21-22.

Plaintiff contends that, read alone, MCL 333.26423(d) does not authorize outdoor growing, so plaintiff could limit such conduct as it saw fit. Proper statutory construction, however, requires reading MCL 333.26423(d) within the overall statutory scheme to prevent reducing a registered caregiver's outdoor growing right and privilege into conduct subject to local government prohibition with potentially severe penalties for violations. Plaintiff's reading improperly turns a blind eye to the rights, privileges, and immunity afforded registered medical marijuana caregivers by MCL 333.26424(b) and qualifying medical marijuana patients under MCL 333.26424(a). Accordingly, plaintiff's argument fails.

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Jane M. Beckering