# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KEITH ERIC WOOD,

        Defendant-Appellant.

FOR PUBLICATION
December 11, 2018
9:10 a.m.

No. 342424
Mecosta Circuit Court
LC No. 17-024073-AR

Before: MURRAY, C.J., and MURPHY and CAMERON, JJ.

MURRAY, C.J.

Defendant was convicted of jury tampering, MCL 750.120a(1), a misdemeanor, for attempting to influence jurors when he stood in front of a courthouse and distributed pamphlets to those he knew to be potential jurors in a case set for trial that day. The circuit court affirmed his conviction, rejecting defendant's statutory and First Amendment arguments. We granted leave to appeal,[1] and now affirm.

## I. FACTS AND PROCEDURAL HISTORY

This matter arose out of defendant's interest in a criminal case involving Andrew Yoder, a member of the Amish community who had been charged with "a DEQ violation" for "illegally draining wetlands." After hearing of the case, defendant decided to attend the pretrial hearing on November 4, 2015, because despite not actually knowing Yoder, the case "piqued [his] interest." At the pretrial hearing, the court scheduled Yoder's trial for November 24, 2015.

Defendant returned to the courthouse on the day set for trial, and stood outside the front entrance to pass out pamphlets entitled "Your Jury Rights: True or False?" that he obtained from the Fully Informed Jury Association (FIJA) website. The pamphlet begins by explaining that jurors may vote according to their conscience. It further advises readers to be aware "when it's your turn to serve" that "[y]ou may, and should, vote your conscience," "[y]ou cannot be forced

---

[1] *People v Wood*, unpublished order of the Court of Appeals, entered February 22, 2018 (Docket No. 342424).

-1-

to obey a juror's oath," and "[y]ou have the right to 'hang' the jury with your vote if you cannot agree with other jurors!"

Although defendant handed or attempted to hand the pamphlet to a number of people that day, his charge for jury tampering resulted from his distribution of the pamphlet to Jennifer Johnson and Theresa DeVries, two people summoned to the court for jury selection. Johnson testified that she arrived at the courthouse unsure of where to go, and approached defendant thinking he was out front to "direct traffic." Although she could not remember who broached the subject, it was established between them that she was there for jury duty. Defendant proceeded to hand her a pamphlet "and sort of pointed at the door." DeVries, on the other hand, testified that as she approached the courthouse, defendant specifically asked if she was there for jury selection. When she confirmed that she was, he handed her a pamphlet and said, " 'Do you know what your rights are for being a jury [sic] on jury duty?' "

Defendant was ultimately arrested and charged with obstruction of justice, MCL 750.505, and jury tampering. Yoder's case, however, never went to trial because the parties reached a plea agreement.

Before trial in his own case, defendant moved the district court to dismiss both charges. The district court granted the motion with respect to obstruction of justice, but declined to dismiss the jury tampering charge. In so doing, the Court rejected defendant's argument that the charge should be dismissed because the term "juror," as used in MCL 750.120a(1), does not encompass individuals like Thompson and DeVries who were summoned for jury duty, but who were never actually selected or sworn, and took defendant's First Amendment argument under advisement. The circuit court affirmed the district court's decision, and defendant was denied leave to appeal by this Court, *People v Wood*, unpublished order of the Court of Appeals, entered December 2, 2016 (Docket No. 334410), as well as the Michigan Supreme Court, *People v Wood*, 500 Mich 963 (2017).

Defendant's two-day jury trial was held in district court. When asked why he decided to distribute the pamphlets, defendant testified that he

> learned a really interesting fact that 95 percent of all criminal cases in the United States, they are pled out before they go to trial. And so there was a—there was a very high likelihood that the *Yoder* case was not going to go to trial, but then I also believed that there were going to be a lot of people around the courthouse and it was going to give me a really good opportunity to educate as many people to hand out the pamphlets and get this information to their hands.

He further stated that he did not know "who was summoned as a potential juror" and that he just handed the pamphlet "[t]o anybody that would receive one."

After the prosecution rested, defendant renewed his motion to dismiss on First Amendment grounds, but the district court rejected the argument, reasoning that defendant "was targeting jurors that were coming in that day," and that there was "a compelling interest in making sure for both the Prosecutor and the defense that there is a fair and impartial jury being chosen and that it is also very clear to me that [defendant] was very interested in that case and

knew that the case was set for trial that day." Further, the court found it to be irrelevant that a trial never occurred in Yoder's case.

At the close of trial, the district court provided the following instructions to the jury regarding the elements of jury tampering:

> First, that Jennifer Johnson and/or Theresa DeVries was a juror/were jurors in the case of *People v Yoder*.

> Second, that the defendant willfully attempted to influence that juror by the use of argument or persuasion.

> Third, that the defendant's conduct took place outside of proceedings in open court in the trial of the case.

> A person acts willfully when she or she acts knowingly and purposefully.

> The word "juror" includes a person who has been summoned to appear in court to decide the facts in a specific trial.

> An "argument or persuasion" can be oral or written.

Defendant was ultimately convicted and then sentenced on July 21, 2017.

On appeal to the circuit court, defendant argued that: (1) "the State" violated his First Amendment rights when he was "arrested and charged because of the content his pamphlet contained," and such conduct would fail a strict scrutiny analysis, (2) he was denied his right to due process because MCL 750.120a(1) is unconstitutionally vague, (3) the district court erred in defining the term "juror" to include persons summoned for jury duty, and (4) even if the district court's interpretation was correct, he should not have been convicted under MCL 750.120a(1) because Yoder's case never proceeded to trial.

The circuit court issued its opinion and order on February 2, 2018, affirming defendant's conviction. In so doing, the court first rejected defendant's First Amendment argument, reasoning that the content of the pamphlet was not at issue because "[t]he statute relates solely to when a person attempts to 'influence' a juror's decision, not to 'influence' them as to any topic whatsoever," and defendant willfully attempted to influence people he believed to be jurors. Secondly, the court concluded that because *Black's Law Dictionary* (10th ed) defines "juror" to include those selected for jury duty, the juror tampering statute applied. And lastly, the court ruled that no evidence existed to support defendant's argument that he was denied a fair trial.

## II. DID DEFENDANT TAMPER WITH A "JUROR?"

Defendant first argues that both trial courts erroneously defined "juror," as used in MCL 750.120a(1), to include those summoned for jury duty. Specifically, he asserts that he could not have tampered with "a juror in any case" under MCL 750.120a(1), because the term "juror" only encompasses those selected and sworn for jury duty, and no jurors were ever selected in Yoder's case.

-3-

Statutory interpretation is a question of law reviewed de novo. *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 505; 778 NW2d 282 (2009). When interpreting statutory provisions, the overriding goal is to discern and give effect to the Legislature's intent. *People v Flick*, 487 Mich 1, 10; 790 NW2d 295 (2010). The words in the statute are, of course, the best evidence of what was intended by the Legislature in passing the statute. *People v Smith*, 496 Mich 133, 138; 852 NW2d 127 (2014) ("The words of a statute are the most reliable indicator of the Legislature's intent and should be interpreted according to their ordinary meaning and the context within which they are used in the statute."). "If the statute is unambiguous on its face, the Legislature will be presumed to have intended the meaning expressed, and judicial construction is neither required nor permissible." *People v Likine*, 492 Mich 367, 387; 823 NW2d 50 (2012).

MCL 750.120a(1) provides:

> A person who willfully attempts to influence the decision of a juror in any case by argument or persuasion, other than as part of the proceedings in open court in the trial of the case, is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00, or both.

The term "juror" is not defined in the statute itself or in the Michigan Penal Code (MPC), MCL 750.1 *et seq*. As a result, we may consult a lay dictionary to determine the plain and ordinary meaning of "juror" if it lacks "a unique legal meaning," *People v Thompson*, 477 Mich 146, 151-152; 730 NW2d 708 (2007), or a legal dictionary if the word is a legal term of art, *People v Jones*, 467 Mich 301, 304; 651 NW2d 906 (2002). See also MCL 8.3a. However, because the definitions of the term "juror" "are the same in both a lay dictionary and legal dictionary, it is unnecessary to determine whether the phrase is a term of art, and it does not matter to which type of dictionary this Court resorts." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 621-622 n 62; 886 NW2d 135 (2016).

Defendant maintains that the rules of statutory construction require a court to consult dictionaries in publication at the time a statute was enacted – 1955[2] in this case – to determine the meaning of an undefined term. The Michigan Supreme Court has recognized the importance of defining a statutory term according to its original meaning. *Cain v Waste Mgt, Inc (After Remand)*, 472 Mich 236, 247; 697 NW2d 130 (2005) (reasoning that because the statute at issue did not define the term "loss," the Court was required to "ascertain the original meaning the word 'loss' had when the statute was enacted in 1912"). See also *Perrin v United States*, 444 US 37, 42; 100 S Ct 311; 62 L Ed 2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). The definition of "juror" found in both lay and legal dictionaries in publication at the time the statute was enacted supports the trial courts' determination that the term, as used in MCL 750.120a(1), includes those summoned for jury duty, even if never selected nor sworn to serve on a jury.

---

[2] See 1955 PA 88.

In deciding defendant's pretrial motion to dismiss, the district court relied in part on *Black's Law Dictionary* (Revised 4th ed), published in 1968, which defines "juror" as "[o]ne member of a jury," and includes a usage note which states, "The term is not inflexible, and besides a person who has been accepted and sworn to try a cause 'juror' may also mean a person selected for jury service." The same usage note appears in *Black's Law Dictionary* (4th ed), published in 1951 and cited by defendant in support of his argument. Moreover, the usage note is consistent with the definition of "juror" in a lay dictionary from 1955. *Webster's New International Dictionary* (1955), provides that a juror is

> [o]ne of a number of men sworn to deliver a verdict as a body; specif., *Law*, a member of a jury, or one designated and summoned to serve on a jury.

> "*Juror*" is uniformly used by the jurists most familiar with the subject as including persons designated or ordered to be summoned as *jurors*. For stronger reasons, it would include them after they are summoned and have appeared in court.

Similar definitions for "juror" also appear in more current legal and lay dictionaries. *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "juror" as both "a member of a jury" and "a person summoned to serve on a jury." And in *Random House Webster's College Dictionary* (2001), "juror" is defined as "a member of a jury," "a member of the panel from which a jury is selected," or "a person who has taken an oath or sworn allegiance." Similarly, *Black's Law Dictionary* (10th ed) states that a "juror" is "[a] member of a jury; a person serving on a jury panel." The definition of "jury panel" directs the reader to "VENIRE," which is defined as "[a] panel of persons selected for jury duty and from among whom the jurors are to be chosen." *Id*. Consequently, based on dictionary definitions from 1955 and today, a "juror" under MCL 750.120a(1) includes a person summoned for jury duty.

Defendant's assertions that MCL 750.120, M Crim JI 1.1, and MCR 6.412(B) support his argument regarding the definition of "juror" also fail. MCL 750.120,[3] which punishes jurors who accept bribes, provides as follows:

> Any person summoned as a juror or chosen or appointed as an appraiser, receiver, trustee, administrator, executor, commissioner, auditor, arbitrator or referee who shall corruptly take anything to give his verdict, award, or report, or who shall corruptly receive any gift or gratuity whatever, from a party to any suit, cause, or proceeding, for the trial or decision of which such juror shall have been summoned, or for the hearing or determination of which such appraiser, receiver, trustee, administrator, executor, commissioner, auditor, arbitrator, or referee shall have been chosen or appointed, shall be guilty of a felony.

Defendant highlights the language "[a]ny person summoned as a juror" to assert that "[i]f the legislature truly intended for jury tampering to include every person who has been summoned, it

---

[3] MCL 750.120 was enacted in 1931. 1931 PA 328.

would have used the same language from the immediately preceding statute." But "the specific rules of statutory construction are merely aids to interpretation." *People v Armstrong*, 212 Mich App 121, 128; 536 NW2d 789 (1995). Looking at MCL 750.120 in its entirety, and considering the context in which the phrase is used, it is obvious to us that the Legislature simply used the phrase "[a]ny person summoned" to describe the act of being called for jury duty, just as it used a descriptive phrase for the rest of the positions listed in the statute, i.e., "[a]ny person . . . chosen or appointed as." No comparable language was necessary or appropriate in MCL 750.120a(1), as it applies only to jurors. Further, statutory language should be read in harmony with the entire legislative scheme, *Charter Twp of York v Miller*, 322 Mich App 648, 662; 915 NW2d 373 (2018), and under the doctrine of *in pari materia*, "statutes that relate to the same subject or that share a common purpose should, if possible, be read together to create a harmonious body of law," *People v Mazur*, 497 Mich 302, 313; 872 NW2d 201 (2015). Both MCL 750.120 and MCL 750.120a aim to preserve the integrity and impartiality of juries. It would be inconsistent with this shared purpose to read one as applicable to anyone summoned for jury duty, and the other as applicable only to those chosen from the pool of summoned jurors and sworn to serve on a jury.

We likewise reject defendant's position that MCR 6.412(B) and M Crim JI 1.1 support his argument because they each use the term "prospective jurors" with regard to preliminary instructions given before the jury selection process. Neither the court rules nor jury instructions are created by the Legislature, so their use of the term "prospective jurors" has no bearing on what the Legislature meant when it used the term "juror" in a statute.[4]

Additionally, neither *People v Cain*, 498 Mich 108; 869 NW2d 829 (2015), nor *Jochen v Co of Saginaw*, 363 Mich 648; 110 NW2d 780 (1961), support defendant's argument. Neither case interpreted the term "juror," as used in MCL 750.120a(1), and we fail to understand how opinions involving the proper juror's oath, see *Cain*, 498 Mich at 112, or whether a person injured while reporting for jury duty should be considered a county employee under the workmen's compensation act, see *Jochen*, 363 Mich at 648, are at all applicable to the separate statutory question before us.

Defendant also argues that the district court misapplied the elements of jury tampering,[5] citing the Michigan Criminal Nonstandard Jury Instructions which recommend the following

---

[4] MCL 600.1334 and MCL 600.1344, which govern juror excusal from attendance in court and juror compensation, support our conclusion that the term "juror," as used in MCL 750.120a(1), includes those summoned for jury duty, but never selected to actually serve on a jury. Both use the term broadly. For instance, MCL 600.1334(1) states, in part, "The chief judge may postpone the service of a juror to a later term of court if the juror has not been called for voir dire examination in any action." And MCL 600.1344 provides that jurors must be compensated for each day of actual attendance at sessions of the court. Although "juror" is undefined, the statutes clearly apply to those persons summoned for jury duty, but not necessarily selected and sworn.

[5] "This Court reviews jury instructions as a whole to determine whether there is error requiring reversal." *People v Bartlett*, 231 Mich App 139, 143; 585 NW2d 341 (1998).

instruction for the first element of the crime: "That [name juror involved] was a juror in the case of [name case in which juror sat]." In so doing, he asserts that "[e]ven the proposed jury instruction acknowledged that the juror must have 'sat' in the case." But this is simply a different way of arguing that the term "juror" does not include those summoned for jury duty, which we have rejected. As stated above, jury instructions are not created by the Legislature and, thus, have no bearing on the interpretation of statutory terms.

Further, the district court did not err by refusing to allow defendant to argue that there were no jurors in Yoder's case because no trial ever occurred. MCL 750.120a(1) only requires that someone attempt to influence "a juror in any case." A trial is not required,[6] and there is no indication that the Legislature sought to exclude from prosecution under MCL 750.120a(1) a person who attempts to influence a juror's decision in a case that is ultimately disposed of before trial.

### III. DID DEFENDANT'S CONVICTION VIOLATE THE FIRST AMENDMENT?

### A. AS-APPLIED CHALLENGE

Having concluded that Johnson and DeVries were "jurors" for purposes of the jury tampering statute, we now must address defendant's alternative argument that MCL 750.120a(1), as applied to his circumstances, violated his First Amendment right to free speech.

We review constitutional questions de novo. *People v Pennington*, 240 Mich App 188, 191; 610 NW2d 608 (2000). "A constitutional challenge to the validity of a statute can be brought in one of two ways: by either a facial challenge or an as-applied challenge." *In re Forfeiture of 2000 GMC Denali & Contents*, 316 Mich App 562, 569; 892 NW2d 388 (2016). "When faced with a claim that application of a statute renders it unconstitutional, the Court must analyze the statute 'as applied' to the particular case." *Crego v Coleman*, 463 Mich 248, 269; 615 NW2d 218 (2000). In other words, "[a]n as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." *Foti v City of Menlo Park*, 146 F3d 629, 635 (CA 9, 1998). See also *Bonner v Brighton*, 495 Mich 209, 223 n 27; 848 NW2d 380 (2014) ("An as-applied challenge, to be distinguished from a facial challenge, alleges 'a present infringement or denial of a specific right or of a particular injury in process of actual execution' of government action.") (citation omitted).

The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law . . . abridging the freedom of speech," US Const, Am I, and is applicable to the states through the Fourteenth Amendment, *McDonald v Grand Traverse Co Election Comm*, 255 Mich App 674, 681; 662 NW2d 804 (2003). "Leafletting and commenting

---

[6] Our dissenting colleague opines that MCL 750.120a(1) is only implicated "after the trial process has begun." But the language referencing a trial is in the exception to the rule, allowing arguments and persuasion of jurors once trial has commenced. That language adds nothing to when a person becomes a juror under this statute.

on matters of public concern are classic forms of speech that lie at the heart of the First Amendment, and speech in public areas is at its most protected on public sidewalks, a prototypical example of a traditional public forum." *Schenck v Pro-Choice Network of Western New York*, 519 US 357, 377; 117 S Ct 855; 137 L Ed 2d 1 (1997).

Defendant's as-applied challenge is based upon his assertion that his conduct involved pure speech, the restriction of which should be subject to strict scrutiny, and the state has no compelling interest in preventing a person from distributing educational pamphlets to potential jurors in a public space. In addressing this as-applied challenge our focus is exclusively on the specific facts at issue—namely, the jury's finding that defendant distributed pamphlets at the courthouse to influence the decision of people he knew to be potential jurors appearing for a case he took an interest in.[7] In fact, as discussed below, the conduct defendant engaged in is precisely the type of speech states have a compelling interest in regulating through validly-enacted statutes.

"[I]t is well understood that the right of free speech is not absolute at all times and under all circumstances." *Chaplinsky v New Hampshire*, 315 US 568, 571; 62 S Ct 766; 86 L Ed 1031 (1942). Although speech is given great protections by the First Amendment, the states nonetheless have the right to punish certain limited speech so long as there is a compelling reason to do so, and it is accomplished in the narrowest fashion. See *Speet v Schuette*, 726 F3d 867, 880 (CA 6, 2013). And, when it comes to the prevention of jury tampering, it has long been held that states may punish or regulate speech *intended to interfere* with court proceedings or with the right of an accused to have his case decided by an impartial jury. See *Turney v State*, 936 P2d 533, 541 (Alas, 1997) (holding that a narrowly drawn jury tampering statute did not implicate protected speech under the First Amendment); *Dawkins v State*, 208 So 2d 119, 122 (Fla App, 1968) ("Efforts to influence a grand jury in its deliberations respecting specific matters under investigation by it are not shielded by the constitutional right of free speech."); *Pennekamp v Florida*, 328 US 331, 366; 66 S Ct 1029; 90 L Ed 1295 (1946) (FRANKFURTER, J., concurring) ("In securing freedom of speech, the Constitution hardly meant to create the right to influence judges or juries."). See also *Cox v Louisiana*, 379 US 559, 562-564; 85 S Ct 476; 13 L Ed 2d 487 (1965) (upholding a statute that prohibited picketing near a courthouse on the basis that "[a] State may adopt safeguards necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence," and that a statute like that at issue does not infringe the right of free speech because "[t]he conduct which is the subject of [the] statute . . . is subject to regulation even though intertwined with expression and association"). Thus, because defendant concedes that MCL 750.120a(1) is facially valid, and a jury found that he

---

[7] Evidence at trial supported the jury's findings. Defendant testified that he took an interest in Yoder's case, and he attended the pretrial hearing where the trial date was announced. He then returned to the courthouse on the day set for trial, and distributed the FIJA pamphlets to several people, including Johnson and DeVries, who both testified that defendant knew they were at the courthouse because they had been summoned for jury duty.

*willfully attempted to influence a juror's decision* in Yoder's case, his as-applied constitutional challenge necessarily fails.[8]

The foregoing is a more direct way of stating that when applying strict scrutiny to the government's actions as defendant urges us to do (and argues the trial courts erred by failing to do), his First Amendment challenge fails because the state has a compelling interest in protecting the sanctity of the jury.[9] "The First Amendment requires heightened scrutiny whenever the government creates a regulation of speech because of disagreement with the message it conveys." *Sorrell v IMS Health Inc*, 564 US 552, 566; 131 S Ct 2653; 180 L Ed 2d 544 (2011) (quotation marks and citation omitted). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v Town of Gilbert, Arizona*, ___ US ___, ___; 135 S Ct 2218, 2227; 192 L Ed 2d 236 (2015). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* at 2226.

Applying strict scrutiny, we hold that application of the statute to defendant's conduct was a narrowly tailored means of furthering the state's compelling interest in preserving the impartiality and integrity of jurors. Defendant concedes that the government has a compelling interest in preventing jury tampering, but states he "does not concede . . . that the State has a

---

[8] The Ninth Circuit rejected a First Amendment challenge to a similar jury tampering statute in *Turney v Pugh*, 400 F3d 1197 (CA 9, 2005). There, the petitioner (who was the petitioner in *Turney v State*, 936 P2d 533 (Alas, 1997)) challenged the Alaska statute as overbroad, and as part of its decision, the court reasoned:

> [T]he First Amendment, while generally quite protective of speech concerning judicial proceedings, does not shield the narrow but significant category of communications to jurors made outside of the auspices of the official proceeding and aimed at improperly influencing the outcome of a particular case. What Alaska's jury tampering statute covers in the main, then, is speech that is not protected by the First Amendment." [*Id.* at 1203.]

Defendant's attempt to distinguish *Turney* on the basis that the Alaska statute expressly defined "juror" to include those summoned for jury duty is misguided, as the term "juror," as used in MCL 750.120a(1), also includes those summoned for jury duty.

[9] Defendant does not argue that MCL 750.120a(1) is on its face a content-based regulation. Rather, he maintains that the government regulated his "speech in a content-based way" given that "[i]t is clear that the government actors in this case arrested and charged [him] because of the content of his pamphlet." We apply strict scrutiny here because although the statute is not a purely content-based restriction, to convict under the statute it must be proven that defendant intended to influence a juror, and that can only be done by reviewing the words communicated to the juror. For example, if defendant was passing out to jurors a newspaper circular with commercial advertisements, he would never have been prosecuted or convicted of jury tampering.

compelling interest to criminalize [his] distribution of a juror rights pamphlet on a public sidewalk." Yet this argument is based on the premise, rejected outright by the jury, that defendant only intended to educate the general public with his pamphlet. The jury, in fact, determined the opposite, as it found that defendant distributed the pamphlets in an attempt to willfully influence the decision of jurors in a particular case. We cannot overemphasize the importance of the jury's finding that defendant intended to influence two jurors summoned for Yoder's case. It is that specific level of intent that takes defendant's case out of the general pamphletting activities protected by the First Amendment.

Further, we reject defendant's argument that the government does not have a compelling interest in preventing tampering with "*potential jurors*." First, as we have already concluded, Johnson and DeVries were "jurors," not "potential jurors." Second, there is no basis in the law that would allow us to recognize the government's interest in protecting the impartiality of jurors only after they have been selected and sworn, as juries are chosen from the pool of people summoned for jury duty. Jurors summoned for duty that are tampered with do not lose that taint if they end up on the jury. See *State v Tucker*, 170 So 3d 394, 406 (La App, 2015) ("Because any threat or attempt to influence a person summoned for jury duty (i.e., a 'prospective juror') in a pending trial impairs the administration of justice in exactly the same way that justice is impaired by a threat or influence of an impaneled 'juror,' we conclude that the term 'juror' in the statute includes a 'prospective juror' within its reach.").

Defendant's additional argument that "[e]ven if the government had a compelling interest in ensuring *potential jurors* are not informed of the powers they rightfully and lawfully possess . . . , the government failed to use the least restrictive means available to accomplish that interest," fares no better. A content-based restriction on speech "must be the least restrictive means of achieving a compelling state interest." *McCullen v Coakley*, ___ US ___, ___; 134 S Ct 2518, 2530; 189 L Ed 2d 502 (2014). Defendant asserts specifically that the government exercised the most extreme option available in response to his conduct by arresting and prosecuting him, and that the government could have instead employed valid time, place, and manner restrictions to regulate his distribution of pamphlets.

We reject this argument for two reasons. First, the argument is based entirely on the rejected premise that defendant's distribution of the pamphlet was an attempt to educate the public rather than a willful attempt to influence the decision of jurors in Yoder's case. Second, although at the time defendant was arrested and charged it appears that certain government actors did not know of defendant's interest in Yoder's case and disapproved of the pamphlet's contents, the jury ultimately found defendant guilty of MCL 750.120a(1), which requires a specific intent to influence jurors. And the evidence presented at trial supported these findings. The law defendant was convicted under does not address the random distribution of pamphlets to the general public outside a courthouse. Instead, the Legislature was concerned with an individual's purposeful attempt to tamper with jurors, which is a compelling state interest. The statute also touches upon only a narrowly defined class of people and speech, i.e., those who purposefully communicate with specific jurors summoned to serve on a case with the intent to influence the decision of a juror. Defendant cannot rely on less restrictive means relating to an entirely

hypothetical governmental interest not present in this case, and the government clearly has no obligation, through statute, regulation, or rule, to designate places and times during which an individual may engage in criminal behavior, speech-related or not.[10]

## B. OVERBROAD CHALLENGE

Defendant also argues that MCL 750.120a(1) is unconstitutionally overbroad because "[w]hen the lower courts redefined the word 'juror' to mean more than a person actually selected, empaneled, and sworn in a case, it vastly expanded the range and scope of the jury tampering statute to reach a substantial amount of constitutionally protected speech." Although defendant characterizes his argument as an as-applied challenge, it is more appropriately considered a facial challenge to the statute itself, as we have held that the lower courts accurately interpreted the term "juror" in MCL 750.120a(1).

"An overbroad statute prohibits protected conduct, primarily conduct protected by the First Amendment." *People v Lueth*, 253 Mich App 670, 676; 660 NW2d 322 (2002). "Under the doctrine of First Amendment overbreadth, a litigant may mount a facial attack on a statute that restricts protected speech even if the litigant's own speech is unprotected." *Turney v Pugh*, 400 F3d 1197, 1200 (CA 9, 2005), citing *Broadrick v Oklahoma*, 413 US 601, 612; 93 S Ct 2908; 37 L Ed 2d 830 (1973). "In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v Flipside, Hoffman Estates, Inc*, 455 US 489, 494; 102 S Ct 1186; 71 L Ed 2d 362 (1982). "Criminal statutes must be scrutinized with particular care; those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *City of Houston, Texas v Hill*, 482 US 451, 459; 107 S Ct 2502; 96 L Ed 2d 398 (1987) (citation omitted).

Defendant asserts that the statute is unconstitutionally overbroad because "a person could be criminally liable for merely speaking with, giving information to, or communicating in any way with a potential juror." For example, he contends, if he "had started handing out pamphlets to the summoned potential jurors *after* the Court released them on the day in question, under the lower courts' redefinition, he could still be charged with jury tampering because they were still summoned for that month." However, defendant's assertions ignore the requirement in MCL 750.120a(1) that to be convicted of jury tampering, a person must possess the willful intent to influence the decision of a juror in a particular case. That requirement serves as a constitutional safeguard. As the Ninth Circuit reasoned in *Turney*, 400 F3d at 1204, "innocent" conversations with jurors will rarely violate a jury tampering statute because such communications will usually

---

[10] Defendant appears to misunderstand the concept of time, place, and manner restrictions. Time, place, and manner restrictions may be used to regulate speech *otherwise protected under the First Amendment*, if such restrictions are content-neutral and narrowly tailored to serve a significant governmental interest. *Clark v Community for Creative Non-Violence*, 468 US 288, 293-294; 104 S Ct 3065; 82 L Ed 2d 221 (1984).

lack "the requisite intent." If a person is not attempting to influence a juror's decision in a case, that person can freely communicate with the juror without violating MCL 750.120a(1).

In its amicus brief, the American Civil Liberties Union contends that "[t]he state's interpretation of the jury tampering statute criminalizes a great variety of First Amendment protected expression," and provides the following hypotheticals:

> Consider whether a citizen committed to decriminalizing possession of controlled substances, passing out material regarding the issue outside a courthouse, would be charged with jury tampering if a prospective juror received the material. Would a group advocating for tort reform be prevented from posting outside the court on days when products liability cases were being tried? Can the court prevent a women's rights organization from holding a rally when sex discrimination cases are on the docket?

Similarly, in its amicus brief, the Cato Institute posed hypotheticals involving op-ed writers, radio personalities, protesters with signs urging conviction, and a wife reminding her husband who has been selected for jury duty that he should not assume government witnesses are more credible than other witnesses.

Despite these concerns, the simple fact is that the conduct prosecuted in this case has no relationship to the eye-grabbing hypotheticals posed, which ignore the intent element of MCL 750.120a(1). For instance, an op-ed writer or radio personality expressing an opinion about a particular case or types of cases would likely not possess the intent necessary to be convicted of jury tampering under MCL 750.120a(1). There is a significant distinction between an individual targeting jurors for a particular case and providing them with information calculated to influence how they conduct their duties as jurors, and an op-ed writer or protester who opines about the general propriety of a prosecution or civil matter, with no intention to influence a particular juror. Moreover, [t]he overbreadth doctrine is not . . . 'casually employed,' even in a case involving a First Amendment challenge." *In re Chmura*, 461 Mich 517, 531; 608 NW2d 31 (2000). "[T]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Members of the City Council of Los Angeles v Taxpayers for Vincent*, 466 US 789, 801; 104 S Ct 2118; 80 L Ed 2d 772 (1984). There is nothing to show that the statute would be applied to anyone or any set of facts that go beyond the intent required by the statute.

With regard to the political demonstration examples, the United States Supreme Court's decision in *Cox*, provides guidance. In that case, the defendant led a group of people outside a courthouse in protest against the arrest of students the day before, and was himself arrested and convicted of intending to influence a juror or to obstruct or impede the administration of justice. *Cox*, 379 US at 560, 564-565. The Court explained that "[t]he conduct which is the subject of this statute—picketing and parading—is subject to regulation even though intertwined with expression and association," *id.* at 563, and ultimately concluded that the statute at issue was facially valid because "the fact that free speech is intermingled with such conduct does not bring with it constitutional protection," *id.* at 564. Thus, to the extent that MCL 750.120a(1) may preclude certain limited courthouse demonstrations, the United States Supreme Court has

countenanced that result given the government's strong interest in the impartial administration of justice. Defendant's First Amendment argument fails.

## IV. DUE PROCESS

### A. VAGUENESS

Defendant next argues that MCL 750.120a, as interpreted and applied by the trial courts, is void for vagueness because it: (1) fails to provide proper notice to citizens "that the distribution of a pamphlet of general information on a public sidewalk to a person who was merely summoned for potential jury duty is a criminal act," (2) is susceptible to arbitrary and discriminatory enforcement, and (3) as erroneously interpreted and applied, impinged on his First Amendment rights.

We review de novo "challenges to the constitutionality of a statute under the void-for-vagueness doctrine." *People v Lawhorn*, 320 Mich App 194, 197 n 1; 907 NW2d 832 (2017). "The 'void for vagueness' doctrine is derived from the constitutional guarantee that the state may not deprive a person of life, liberty, or property, without due process of law." *State Treasurer on Behalf of Dep't of Corrections v Wilson (On Remand)*, 150 Mich App 78, 80; 388 NW2d 312 (1986). "A penal statute may be unconstitutionally vague if it (1) fails to provide fair notice of the conduct proscribed, (2) permits arbitrary and discriminatory enforcement, or (3) is overbroad and impinges on First Amendment freedoms." *People v Sands*, 261 Mich App 158, 161; 680 NW2d 500 (2004). "A vagueness challenge must be considered in light of the facts at issue." *Id*. "When presented with a vagueness challenge, we examine the entire text of the statute and give the words of the statute their ordinary meanings." *People v Morey*, 230 Mich App 152, 163; 583 NW2d 907 (1998), aff'd 461 Mich 325 (1999).

"To afford proper notice of the conduct proscribed, a statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *People v Roberts*, 292 Mich App 492, 497; 808 NW2d 290 (2011). "A statute cannot use terms that require persons of ordinary intelligence to speculate regarding its meaning and differ about its application." *Sands*, 261 Mich App at 161. "For a statute to be sufficiently definite, its meaning must be fairly ascertainable by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words." *Id*.

Defendant first asserts that if the trial courts' interpretation of MCL 750.120a(1) is correct, then the law is unconstitutionally vague because "[n]o statute, case, or any other Michigan authority exists which would have given notice to the citizenry that the word 'juror' included anyone who had simply received a summons in the mail." However, a person of ordinary intelligence does not have to speculate as to the word's meaning. Rather, the definition of "juror" is readily ascertainable to anyone with access to a dictionary. *Sands*, 261 Mich App at 161. Further, defendant's assertion that a person of ordinary intelligence comparing MCL 750.120 and MCL 750.120a(1) would look at the statutes and naturally conclude that one covers a person summoned for jury duty while the other does not, lacks merit for the reasons already stated.

Defendant also suggests that MCL 750.120a(1) is susceptible to arbitrary and discriminatory enforcement, asserting that his own arrest and prosecution were based on the government's "animus towards the content of his pamphlet." Even if the decision to arrest and charge defendant was primarily based on the content of the pamphlet, the pamphlet provided evidence of his intent to influence a juror and was relevant to his prosecution. Additionally, although a statute may be misapplied by officials, our primary focus is on whether the statute *permits* arbitrary and discriminatory enforcement, not whether an isolated official happens to arbitrarily enforce it. See *Allison v Southfield*, 172 Mich App 592, 596; 432 NW2d 369 (1988) ("Even if one of the evils sought to be prevented by the vagueness doctrine is the vesting of unstructured discretion and the resultant arbitrary and [discriminatory] enforcement of the law, the doctrine is not triggered unless the wording of the promulgation is itself vague.") (citation omitted). Defendant has not shown that MCL 750.120a(1) is unconstitutionally vague. *People Vandenberg*, 307 Mich App 57, 62; 859 NW2d 229 (2014).

## B. FAIR TRIAL

Lastly, defendant argues that he was denied his right to a fair trial because the district court precluded him from arguing the elements of MCL 750.120a(1), and because he was not permitted to cross-examine Magistrate Lyons regarding purported bias against him.

We review de novo whether a defendant received a fair trial. *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). With regard to the elements of jury tampering, defendant asserts he should have been allowed to argue that the absence of an actual trial in Yoder's case precluded his conviction under MCL 750.120a(1). However, the statute contains no requirement that a trial take place, and the argument is duplicative of his underlying position, rejected in this opinion, that only those selected and sworn for jury service may be considered jurors under the statute.

With regard to Magistrate Lyons's purported bias, "[a] primary interest secured by the Confrontation Clause[,US Const, Am VI,] is the right of cross-examination." *People v Gaines*, 306 Mich App 289, 315; 856 NW2d 222 (2014). "Neither the Sixth Amendment's Confrontation Clause nor due process confers on a defendant an unlimited right to cross-examine on any subject." *People v Canter*, 197 Mich App 550, 554; 496 NW2d 336 (1992). "Rather, the Confrontation Clause protects the defendant's right for a *reasonable* opportunity to test the truthfulness of a witness' testimony." *People v Ho*, 231 Mich App 178, 190; 585 NW2d 357 (1998). However, "[a] limitation on cross-examination that prevents a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred constitutes denial of the constitutional right of confrontation." *People v Kelly*, 231 Mich App 627, 644; 588 NW2d 480 (1998).

Defendant contends specifically that he wished to examine Magistrate Lyons regarding conduct at the arraignment, where Magistrate Lyons allegedly "set an unconstitutionally high bond of $150,000.00 (10%)" and "refused to appoint [him] an attorney," and that the district court erred by denying him the opportunity to do so. Defendant identifies caselaw suggesting that a defendant has a constitutional right to examine a witness's bias, *Kelly*, 231 Mich App at 644; *Hayes v Coleman*, 338 Mich 371, 380-381; 61 NW2d 634 (1953), and the matters identified

by defendant arguably show that Magistrate Lyons was biased against him. However, even if the district court erred by precluding cross-examination, the error would be harmless.

> [V]iolations of the right to adequate cross-examination are subject to a harmless-error analysis. Whether such an error is harmless in a particular case depends on a host of factors, including the importance of the witness' testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. [*Kelly*, 231 Mich App at 644-645.]

Magistrate Lyons's testimony merely provided context for the events of the day. He testified about when he learned of the pamphlets, his interaction with defendant, and his subsequent conversation with Judge Jaklevic. Further, he testified that Yoder's case was the only case scheduled for trial on the day in question. This testimony was cumulative to that of other witnesses, namely Judge Jaklevic, and had little bearing on whether defendant actually violated MCL 750.120a(1). Moreover, we see nothing to suggest that the jury would have reached a different result had it concluded that Magistrate Lyons was biased against defendant and not credible. As a result, we cannot hold that defendant was denied a fair trial on this basis.

Affirmed.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron

-15-