*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MONTRELL DEVON WHEELER,

        Defendant-Appellant.

UNPUBLISHED
May 30, 2024

No. 362476
Wayne Circuit Court
LC No. 21-000120-01-FC

Before: GARRETT, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

A jury convicted defendant, Montrell Devon Wheeler, of second-degree murder, MCL 750.317, for the stabbing death of Tyrese Tate. For his conviction, the trial court sentenced him to 225 months to 30 years' imprisonment. In his appeal, Wheeler claims that the prosecutor failed to present sufficient evidence to rebut his prima facie claim of self-defense. He also asserts that his trial counsel was ineffective for failing to challenge inaccurate evidence, advising him not to testify at trial, and to call a certain witness because these errors undermined his self-defense claim. Wheeler also raises a variety of other arguments, including challenges to the scoring of offense variables (OVs) 5 and 6, the jury instructions, the limitation of his cross-examination of a prosecution witness, and the deprivation of due process stemming from a faulty arrest warrant. Because Wheeler's challenges all lack merit, we affirm.

## I. BACKGROUND

This case arises from the murder of Tyrese Tate. In July 2020, Wheeler and his then-girlfriend, CA, got into a heated argument at a local restaurant. The argument escalated into a physical altercation, and Wheeler allegedly threatened to harm CA. Police were called and escorted CA back to the home she shared with Wheeler and her two sons, DA and XA. Fearing for her safety, CA called Tate, a 6 foot 7 inch, 300-pound family friend, to come to her house for protection. Later that night, Wheeler returned home to find Tate there. The two men were not strangers and had physically fought on at least one prior occasion. Wheeler repeatedly told Tate to leave, but Tate refused and a verbal argument ensued. Wheeler, Tate, and CA eventually went outside where Wheeler produced a knife and pointed it at Tate.

-1-

At some point, Wheeler and CA went back inside, leaving Tate on the front porch. Thirteen-year-old DA joined Tate on the porch for about 10 to 20 minutes, during which time DA believed Wheeler locked them out of the house. Wheeler eventually unlocked the front door, stepped onto the enclosed porch and, once again, began arguing with Tate. During this confrontation, Tate called 911 and Wheeler stabbed him in the neck with a pocket knife, severing his jugular vein. Wheeler then grabbed and smashed Tate's phone. CA returned to the porch to find that Tate had been stabbed. Tate left the porch and walked down the street to find help. CA ran into the house to grab a towel to assist Tate, but was stopped by Wheeler. Wheeler calmly went to bed. Ultimately, Tate died from his injury.

At trial, Wheeler offered the affirmative defense of self-defense, maintaining that Tate came at him with a knife and that he stabbed Tate out of fear for his life. The prosecution presented evidence showing that Wheeler acted as the aggressor when he left the safety of his home to confront and stab Tate even though Tate had not threatened him and was only there to protect CA. The trial court instructed the jury on the charged offense of first-degree premeditated murder, the lesser offense of second-degree murder, and the theory of self-defense. The court denied Wheeler's request for an instruction on the lesser offense of voluntary manslaughter, finding that a reasonable person could not conclude that there was adequate provocation to mitigate Wheeler's actions. Ultimately, the jury found Wheeler guilty of second-degree murder.

At sentencing, Wheeler challenged the scoring of OVs 5 and 6. Based on the jury's verdict and a victim impact statement from Tate's mother, the trial court assessed 15 points for OV 5, 25 points for OV 6, and sentenced Wheeler as noted above. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Wheeler argues in both a brief filed by appointed appellate counsel and in a Standard 4 brief, "a brief filed by the defendant *in propria persona* in which he or she raises issues on appeal against the advice of counsel," *People v Ryan*, 295 Mich App 388, 392 n 1; 819 NW2d 55 (2012), that the prosecution failed to produce sufficient evidence to prove beyond a reasonable doubt that he was not acting in self-defense when he stabbed Tate. He does not challenge the sufficiency of the evidence underlying the elements of his second-degree murder conviction.

### A. STANDARD OF REVIEW

We review a sufficiency-of-the-evidence challenge de novo, meaning "we do not defer to any decision made by the trial court, but instead employ our independent judicial views while employing the well-settled standards for deciding sufficiency issues." *People v Harverson*, 291 Mich App 171, 176; 804 NW2d 757 (2010). In determining whether sufficient evidence was presented to support a conviction, we view the evidence in a light most favorable to the prosecution, resolving any conflicts in the prosecution's favor, to determine whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt. *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## B. DISCUSSION

"As a general matter, a defendant who asserts the affirmative defense of self-defense "admits the crime but seeks to excuse or justify its commission." *People v Triplett*, 499 Mich 52, 57; 878 NW2d 811 (2016) (citation omitted). "Once a defendant raises the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt." *People v Ogilvie*, 341 Mich App 28, 36; 989 NW2d 250 (2022) (cleaned up). " 'With the enactment of the Self-Defense Act (SDA), MCL 780.971 *et seq*., the Legislature codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having a duty to retreat.' " *People v Thigpen*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 360351); slip op at 5, lv pending, quoting *People v Dupree*, 486 Mich 693, 708; 788 NW2d 399 (2010). Under MCL 780.972(1)(a) of the SDA, "[a]n individual who has not or is not engaged in the commission of a crime at the time," "may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if" he or she "honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual."

In this case, Wheeler produced evidence to set forth a prima facie case of self-defense. In his police interview, played before the jury, Wheeler stated that when he found Tate in his home he repeatedly told Tate to leave. Tate refused and remained outside the home in the enclosed porch. When Wheeler opened the door to the porch to once again tell Tate to leave, Tate approached him holding a "big ass knife." Wheeler then used his pocket knife to stab Tate in an effort to protect himself. Additionally, Tate's mother testified that shortly after hearing his voice on a recorded 911 call, she heard another voice say, "Get the fuck . . . off my porch." She then heard the voice say, "He came on my porch with a knife. [H]e tried to threaten me." These facts support Wheeler's assertion that he honestly and reasonably believed that the use of deadly force was necessary to prevent imminent death or bodily harm.

Contrary to Wheeler's arguments, the prosecution presented ample evidence to prove that Wheeler did not stab Tate in self-defense. Both DA and CA testified in a manner consistent with Wheeler being the aggressor. CA testified that she invited Tate to her home after she and Wheeler had a domestic dispute at a restaurant earlier that evening. When Wheeler arrived at the house, he recognized Tate. CA stated that Wheeler and Tate did not like each other and had previously engaged in a physical confrontation. CA testified that when she, Wheeler, and Tate went outside the home that evening, Wheeler was already brandishing his knife. Indeed, CA saw Wheeler with a knife shortly after he entered the home, and she said he was not shy about pointing the blade at Tate. There was testimony that Tate also possessed a knife, described as a kitchen or bread knife, but neither CA nor DA saw Tate threaten Wheeler with the knife. Although CA did not witness the actual stabbing, she denied seeing Tate with a knife before he was stabbed by Wheeler. According to CA, when she attempted to help Tate after he was stabbed, Wheeler stopped her. The record also shows that Tate called 911 before he was stabbed, but Wheeler took his phone and smashed it. After the stabbing, Wheeler calmly went into his home and climbed into bed as if nothing had happened.

DA testified that when Wheeler first arrived home that evening, Wheeler and Tate argued in the kitchen for a few minutes. When DA and Tate left the home and sat on the enclosed front porch, DA testified Wheeler locked them out of the house. About 10 to 20 minutes later, Wheeler voluntarily came out onto the front porch, where he and Tate continued to argue. Tate then called the police and while he was on the phone with the 911 operator, Wheeler stabbed Tyrese once in the throat. DA denied seeing Tate do anything with his knife, such as waving it around, gesturing, or lunging toward Wheeler before Wheeler stabbed him.

The primary evidence suggesting that Wheeler had reason to fear for his life was his own statements made to police. Those statements, however, conflicted with both DA's and CA's description of events. Thus, the weight to be given to the evidence was dependent on the jury's assessment of the witnesses' credibility. *People v Young*, 472 Mich 130, 143; 693 NW2d 801 (2005). By finding Wheeler guilty of second-degree murder, the jury necessarily found that DA's and CA's testimony was more credible, and the evidence weighed against finding that Wheeler acted in self-defense. Because we do not "interfere with the trier of fact's determinations regarding the weight of the evidence or the credibility of witnesses," *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014), and the evidence, viewed in a light most favorable to the prosecution, was sufficient to enable the jury to find beyond a reasonable doubt that Wheeler did not act in self-defense, we find no error.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

In both his appellate and Standard 4 briefs, Wheeler contends that he was denied the effective assistance of counsel because trial counsel stipulated to the admission of the medical examiner's autopsy report. Additionally, in his Standard 4 brief, Wheeler argues that trial counsel was ineffective for failing to call a material witness and for advising him not to testify.

### A. STANDARD OF REVIEW

Because Wheeler did not raise his ineffective assistance of counsel claims in a motion for a new trial or request an evidentiary hearing in the trial court, or request we remand for such a hearing, our review is limited to mistakes apparent on the existing record. *People v Jackson*, 313 Mich App 409, 431; 884 NW2d 297 (2015). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *Ogilvie*, 341 Mich App at 34 (cleaned up).

### B. LEGAL PRINCIPLES

The Michigan and United States Constitutions require that criminal defendants receive the assistance of counsel in their defense. Const 1963, art 1, § 20; US Const Am VI. "The right to counsel . . . is the right to the effective assistance of counsel." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016). "To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Id*. "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *People v Traver*, 328 Mich App 418, 422; 937 NW2d 398 (2019). This burden includes "overcom[ing] the strong presumption

-4-

that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "But a court cannot insulate the review of counsel's performance by calling it trial strategy; counsel's strategy must be sound, and the decisions as to it objectively reasonable." *People v Ackley*, 497 Mich 381, 388-389; 870 NW2d 858 (2015).

## C. STIPULATING TO THE ADMISSION OF THE AUTOPSY REPORT

Wheeler argues that trial counsel was ineffective for stipulating to the admission of the medical examiner's autopsy report which contained a notation that Tate was 6 feet 2 inches tall, despite witness testimony describing Tate as being 6 feet 6 inches or 6 feet 7 inches tall. Wheeler contends that he was prejudiced by this information because it could have caused the jury to find that Tate did not appear as threatening, weakening Wheeler's claim of self-defense.

Decisions on what evidence to present are presumed to be matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). "Hearsay is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *People v Dendel*, 289 Mich App 445, 452; 797 NW2d 645 (2010) (cleaned up). "Generally, hearsay is inadmissible unless it comes within an exception to the hearsay rule." *Id*. MRE 803(8) is the public records exception to the hearsay rule. *People v Jambor*, 273 Mich App 477, 484; 729 NW2d 569 (2007). Under MRE 803(8)(B), observations regarding a decedent made in autopsy reports prepared by a medical examiner are admissible under MRE 803(8).[1] See *People v Shipp*, 175 Mich App 332, 339-340; 437 NW2d 385 (1989) (concluding that while a medical examiner's conclusions and opinions were not admissible under MRE 803(8), his observations were);[2] *People v Rode*, 196 Mich App 58, 68; 492 NW2d 483 (1992) (observing that if statements in an autopsy report are observations instead of conclusion and opinions, they are admissible under MRE 803(8)(B)), rev'd on other grounds sub nom in *People v Hana*, 447 Mich 325 (1994).

Throughout the trial, Wheeler's main contention was that he stabbed Tate in self-defense. As part of this theory, defense counsel emphasized the effect that Tate's large size had on Wheeler's belief that he was in danger of imminent death or great bodily harm. CA and DA testified that Tate stood at about 6 feet 7 inches. But the medical examiner's autopsy report, admitted at trial, states that Tate measured only 6 feet 2 inches. Wheeler claims that this discrepancy undermined his claim of self-defense and counsel was ineffective for stipulating to the admission of the report. Although the report's statement conflicts with the testimonial evidence, even if counsel had objected to the admission of the report, any objection would have been futile. The medical examiner's statement about Tate's height is not a conclusion or opinion, but an observation. Thus, the statement would have been admissible under MRE 803(8)(B). Because the failure "to advance a meritless argument or raise a futile objection does not constitute

---

[1] MRE 803 was amended effective May 1, 2024. The substance of MRE 803(8) remains the same, although the rule was restructured and reworded.

[2] Opinions of this Court issued before November 1, 1990, are not strictly binding under MCR 7.215(J)(1), but are generally afforded some deference unless contradicted by more recent caselaw. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114; 923 NW2d 607 (2018).

ineffective assistance of counsel," *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010), Wheeler's counsel was not ineffective for stipulating to the admission of the medical examiner's report.

Wheeler also failed to show that he was prejudiced by the report. Wheeler's self-defense claim hinged primarily on resolving the factual discrepancies between his version of events presented in his police interview and the testimony of DA and CA to determine whether Tate physically threatened Wheeler, displayed a knife in a threatening manner, or engaged Wheeler just before he was stabbed. Throughout the trial, both parties described Tate as a large and imposing man. Even the prosecutor did not dispute this fact: "He was this huge guy right, 6' 6/6' 7." Although Tate's size was undeniably a factor in determining whether Wheeler reasonably and honestly believed he was in danger, given that there were many other disputed facts at issue and the prosecutor agreed with the characterization of Tate's height, there is no reasonable probability that but for counsel's failure to challenge an isolated notation in the autopsy report, the result of the proceedings would have been different.

## D. FAILURE TO CALL A WITNESS

Wheeler also claims that trial counsel was ineffective for failing to call the manager of the restaurant he visited with CA on the day of Tate's murder and for advising him not to testify during trial.

A claim of ineffective assistance of counsel premised on the failure to call a witness is analyzed under the same standard as all other claims of ineffective assistance of counsel, which requires a defendant to demonstrate that his counsel's performance fell below an objective standard of reasonableness and that but for trial counsel's deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. *People v Jurewicz*, 506 Mich 914; 948 NW2d 448 (2020). But deciding what witnesses to call is generally considered a matter of trial strategy. *Traver (On Remand)*, 328 Mich App at 428.

Wheeler first argues that counsel was ineffective in not calling the restaurant manager because her testimony would have bolstered his claim of self-defense.

Wheeler submits that had the manager of the restaurant testified, she would have provided details about CA's behavior that evening, including that CA was visibly intoxicated and flirting with other staff members to try to upset him. Wheeler has not submitted *any* proof showing what the manager would have testified about had she been called at trial. Because Wheeler has the burden of establishing the factual basis for his ineffective assistance of counsel claim, *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), his argument fails.

Even if we were to accept Wheeler's claim that the manager would have testified about CA's behavior at the restaurant, Wheeler has not shown that he was prejudiced by the absence of her testimony. In his videotaped police interview, Wheeler explained that CA was intoxicated at the restaurant, refused to leave, sat down on the floor, and deliberately slapped a carryout container out of his hands. Thus, the jury learned of CA's conduct without the manager's testimony. Additionally, although information about CA's conduct may have provided context to the initial argument between Wheeler and CA, this context would not assist the jury in deciding whether or

not Wheeler acted in self-defense in stabbing Tate. The restaurant manager's testimony would have been cumulative and unrelated to the main issue at trial. Thus, there is no reasonable probability that the absence of her testimony affected the outcome of his trial.

Wheeler also asserts trial counsel was ineffective for advising him not to testify. But the record shows that the trial court advised Wheeler of his constitutional right to testify and confirmed that he had an opportunity to confer with counsel. In response, Wheeler expressed that it was his own choice not to testify. Further, during trial, defense counsel played the video recording of Wheeler's police interview, which allowed him to provide his version of events to the jury. Had Wheeler testified, he may have risked impeachment or exposure to potential inconsistencies between his interview statements and his trial testimony. Because nothing in the record suggests that trial counsel's advice fell below an objective standard of reasonableness, Wheeler has failed to show that he was denied the effective assistance of counsel.

## IV. OFFENSE VARIABLE SCORING

Wheeler argues that he is entitled to resentencing because the trial court improperly scored OVs 5 and 6 of the sentencing guidelines.

## A. STANDARD OF REVIEW

"A trial court's factual determinations at sentencing are reviewed for clear error and need only be supported by a preponderance of the evidence." *People v Carter*, 503 Mich 221, 226; 931 NW2d 556 (2019). When scoring OVs, the trial court may evaluate all the evidence from the record, such as testimony presented at a preliminary examination or trial, and apply the evidence to make a sentencing decision. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). "Whether the facts, as found, are adequate to warrant the assessment of points under the pertinent OVs and [prior record variables (PRVs)] is a question of statutory interpretation," which we review de novo. *Carter*, 503 Mich at 226.

## B. DISCUSSION

Wheeler first argues the trial court erred by assessing 15 points for OV 5 because the evidence does not support a finding that Tate's mother suffered a serious psychological injury.

MCL 777.35(1) addresses OV 5, which considers "psychological injury to a member of a victim's family." The trial court is directed to assess 15 points if "[s]erious psychological injury requiring professional treatment occurred to a victim's family" and 0 points if "[n]o serious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(a) and (b). The court is required to score 15 points "if the serious psychological injury to the victim's family may require professional treatment" and "the fact that treatment has not been sought is not conclusive." MCL 777.35(2).

At sentencing, Tate's mother shared that although her son had always been a "big boy," he was fun, loving, caring, and "never wanted to hurt anybody." She expressed deep sadness and hurt over losing the opportunity to become a grandmother, have a daughter-in-law, or hear her son's voice again. Additionally, the presentence investigation report indicates that as a result of

his death, Tate's mother sought counseling to help her deal with the grief and pain of losing her only son. Because this evidence supports a finding that Tate's mother suffered a serious psychological injury requiring treatment as a result of his death, the trial court did not err by assessing 15 points for OV 5.

Wheeler also argues that the trial court erred by assessing 25 points for OV 6 because the evidence shows he killed Tate during a combative situation.

OV 6 is governed by MCL 777.36, which assesses a defendant's "intent to kill or injure another individual." MCL 777.36(1). The trial court must assign 25 points to OV 6 if the defendant "had an unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result[.]" MCL 777.36(1)(b). Alternatively, the trial court must assign 10 points to OV 6 if the killing was intentional within the definition of second-degree murder or voluntary manslaughter, but the death occurred in a combative situation or in response to victimization of the offender by the decedent. MCL 777.36(2)(b). "However, under MCL 777.36(2)(a), a sentencing court *must* score OV 6 consistently with a jury verdict unless the judge has information that was not presented to the jury." *People v Dixon-Bey*, 321 Mich App 490, 527; 909 NW2d 458 (2017) (cleaned up, emphasis added).

Although Wheeler was charged with first-degree murder, the jury convicted him of the lesser offense of second-degree murder, which reflects that they found Wheeler did not premeditate the killing. See *People v Walker*, 330 Mich App 378, 383-384; 948 NW2d 122 (2019). In reaching this decision, the jury rejected Wheeler's contention that he was acting in self-defense when he killed Tate, meaning the jury found that Wheeler's use of deadly force was not justified by the circumstances immediately preceding Tate's death. See MCL 780.972(1); *People v Heflin*, 434 Mich 482, 502-503; 456 NW2d 10 (1990). This supports a score of 25 points for OV 6. MCL 777.36(1)(b). At sentencing, in accordance with MCL 777.36(2), the trial court assessed 25 points for OV 6 because it was "consistent with the verdict that was rendered by the jury in this case." Wheeler claims that 10 points should have been assessed for OV 6 because right before the stabbing, Tate threatened him with a knife. Directly in opposition of this claim, however, is DA's testimony that although Tate had a knife, he did not wield it against Wheeler in the moments just before the stabbing. Because the trial court's assessment of 25 points is consistent with the jury's verdict and is supported by record evidence, the court did not err when scoring OV 6, and Wheeler is not entitled to resentencing.

## V. STANDARD 4 BRIEF

In his Standard 4 Brief, Wheeler argues he is entitled to a new trial or that his conviction should be reversed because: the trial court erred by denying his jury instruction request; the arrest warrant underlying his conviction included inaccurate information; and the trial court improperly limited the testimony of a witness during trial.

## A. JURY INSTRUCTIONS

Wheeler argues that the trial court abused its discretion by denying his request for a jury instruction on the lesser offense of voluntary manslaughter.

"We review a claim of instructional error involving a question of law de novo, but we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion." *People v Everett*, 318 Mich App 511, 528; 899 NW2d 94 (2017) (cleaned up). An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *Id*. at 516.

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). One of the essential roles of the trial court is to present "the case to the jury and to instruct it on the applicable law" with instructions that include "all the elements of the offenses charged against the defendant and any material issues, defenses, and theories that are supported by the evidence." *Id*. In *People v Mendoza*, 468 Mich 527, 536; 664 NW2d 685 (2003), our Supreme Court explained that manslaughter is a lesser included offense of murder. Voluntary manslaughter occurs when a defendant kills in the heat of passion, the passion is caused by adequate provocation, and there is no lapse of time during which a reasonable person could control their passions. *People v Yeager*, 511 Mich 478, 489; 999 NW2d 490 (2023). "The provocation must be sufficient to cause the defendant to act out of passion rather than reason, but it also must be sufficient to cause a reasonable person to lose control, not just the specific defendant." *Id*. Because voluntary manslaughter is a necessarily included lesser offense, when a defendant is charged with murder, the trial court must give an instruction for voluntary manslaughter if it is "supported by a rational view of the evidence." *Id*. at 490 (cleaned up).

Considering the entire record, the trial court did not err by concluding that a rational view of the evidence did not support an instruction on voluntary manslaughter. The trial court analyzed the evidence in a light most favorable to Wheeler, mainly relying on his version of events as described in his police interview. Although Wheeler's statements indicated that he felt unsafe by Tate's presence and the impending threat of men arriving at his home with guns, Wheeler acknowledged that Tate was outside of the home. Wheeler, on the other hand, was in his doorway, where he could have retreated to the safety of his home and, as the trial court observed, no other individuals ever arrived. More significantly, Wheeler's own statement indicates that he stabbed Tate because Tate approached him in the doorway and grabbed the front door while armed with a "big ass knife," causing Wheeler to fear for his safety. This evidence, if believed, supported a claim of self-defense, which the jury was allowed to consider and rejected. But it did not demonstrate a situation whereby the stabbing occurred in the heat of passion, under circumstances that would cause a reasonable person to lose control. Because the record supports the trial court's decision to deny Wheeler's request for a voluntary manslaughter jury instruction, there is no error.

## B. ARREST WARRANT

Wheeler argues that his due-process rights were violated because Detective Kelly Lucy's arrest warrant affidavit intentionally or negligently included false and inaccurate information.

Because Wheeler did not challenge the validity of the affidavit offered in support of his arrest warrant before the trial court, his argument is unpreserved. *People v Solloway*, 316 Mich App 174, 197; 891 NW2d 255 (2016). We review unpreserved issues for plain error affecting substantial rights. *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). Establishing the infringement of substantial rights

generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. Reversal will only be warranted when the plain error leads to the conviction of an actually innocent defendant or when an error affects the fairness, integrity, or public reputation of judicial proceedings. [*People v Bailey*, 330 Mich App 41, 53-54; 944 NW2d 370 (2019) (cleaned up).]

A signed complaint and warrant form the basis for the felony information, which begins criminal proceedings. *People v Glass (After Remand)*, 464 Mich 266, 277; 627 NW2d 261 (2001). The purpose of the complaint is to allow the magistrate to determine whether to issue a warrant. *People v Higuera*, 244 Mich App 429, 443; 625 NW2d 444 (2001). A magistrate must issue a warrant if he finds there is reasonable cause to believe the individual named in the complaint committed the offense. MCL 764.1a(1). The magistrate may base his reasonable cause determination on factual allegations made in the complaint itself, an affidavit, or sworn testimony. MCL 764.1a(4). A defendant must make a substantial showing "that a false statement knowingly and intentionally, or with reckless disregard for the truth was included in a warrant affidavit." *People v Sawyer*, 215 Mich App 183, 194; 545 NW2d 6 (1996) (cleaned up).

Wheeler challenges this statement from Detective Lucy's affidavit:

The suspect stated the victim then entered the screen porch area again. He stated he observed the victim with a long knife. The suspect then opened the door and stabbed the victim in the neck [one] time.

Wheeler argues that this information is inaccurate and reflects an intentional and reckless disregard for the truth because no witness ever told Detective Lucy that he opened the door to stab Tate. Instead, Wheeler contends that he told Detective Lucy he was already outside on the porch when Tate entered with a knife. But Wheeler has not provided *any* evidence to support this claim. Even if Wheeler had produced such evidence, the affidavit contains sufficient factual allegations to support the magistrate's finding of reasonable cause. For example, the affidavit states: "[CA] stated that [Tate and Wheeler] began arguing then Mr. Wheeler pushed her into the house, then when he came back in he stated I cut him." The affidavit also indicates that officers recovered a pocket knife matching the description of the knife that Wheeler admitted having during his altercation with Tate. Because these facts support a finding of reasonable cause, Wheeler has failed to demonstrate that he was prejudiced by Detective Lucy's allegedly inaccurate statement, and there is no plain error.

## C. LIMITING CROSS-EXAMINATION

Wheeler also contends that he was denied due process and his rights under the Confrontation Clause, US Const, Am VI, were violated because the trial court improperly limited his ability to cross-examine Detective Lucy.

We review a trial court's limitations on cross-examination for an abuse of discretion. *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015).

In *People v Wood*, 326 Mich App 561, 589; 928 NW2d 267 (2018), rev'd on other grounds 506 Mich 114 (2020), this Court observed that neither the Sixth Amendment's Confrontation

Clause nor due process entitle a defendant to an unlimited right to cross-examine witnesses on any subject. Rather, the scope of cross-examination is within the discretion of the trial court. *People v Canter*, 197 Mich App 550, 564; 496 NW2d 336 (1992). For example, a trial court has discretion to deny cross-examination on collateral matters that bear only on general credibility and issues that are irrelevant. *Id*. The Confrontation Clause only protects a defendant's right to a "reasonable opportunity to test the truthfulness of a witness'[s] testimony." *Wood*, 326 Mich App at 589 (cleaned up). But the Confrontation Clause may not be used in a way that precludes the defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness may be inferred, because this will result in denial of the constitutional right of confrontation. *Id*. at 589-590.

While questioning Detective Lucy, defense counsel confirmed that CA reported what took place at her house before and after the stabbing. When counsel attempted to question Detective Lucy about the contents of CA's recorded interview statements, the prosecutor raised a hearsay objection. Counsel argued that the statements were not hearsay because he was not offering them for their truth, but to attack the integrity of the police investigation because a lot of the information in CA's recorded interview was not included in a condensed written statement. Although the trial court ruled that defense counsel could not question Detective Lucy regarding CA's interrogation statements, the record shows that defense counsel was permitted to elicit Detective Lucy's agreement that CA told her that Tate had been throwing lawn ornaments at the house and had threatened to have people come over to the house.

Although Wheeler claims that the trial court erred by not allowing trial counsel to cross-examine Detective Lucy about her interrogation of CA, the record indicates that counsel was given the opportunity to ask Detective Lucy questions about CA's interview statements. CA's statements were consistent with her previous testimony regarding certain events that Wheeler used to support his theory of self-defense, including that Tate was outside the house throwing lawn ornaments, yelling and screaming, and threatening to break the windows and climb into the house. CA spoke about these events during her testimony and provided context, explaining that this behavior occurred after Tate was locked out of the house by Wheeler and while Tate was afraid that Wheeler "was gonna do something to [CA]." CA also acknowledged that she told Detective Lucy that Tate used his phone to "call" his Uncle Gabe, and was "[t]elling him to pull up with the sticks," which CA understood to mean guns. CA stated that Tate was just pretending to make a call and no one was on the other end.

The record shows that Wheeler was afforded a reasonable opportunity to question Detective Lucy regarding her interrogation of CA, including that CA reported certain events on which Wheeler relied to support his theory of self-defense. To the extent that the trial court may have abused its discretion, the error was harmless beyond a reasonable doubt, see *People v Hyde*, 285 Mich App 428, 447; 775 NW2d 833 (2009) (a preserved constitutional error is harmless only if it is harmless beyond a reasonable doubt), because the restriction on cross-examination was limited to Detective Lucy's recollection of CA's interview statements and Wheeler had ample opportunity to cross-examine CA regarding the content of her interview statements. Because the trial court's limitation of counsel's cross-examination was not outside the range of reasonable and principled outcomes, Wheeler is not entitled to relief.

We affirm.

/s/ Kristina Robinson Garrett
/s/ Deborah A. Servitto
/s/ James Robert Redford